**W. W. GRAINGER, INC., Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 77–1532.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 7, 1977.

Decided Aug. 15, 1978.

Charles C. Jackson, Chicago, Ill., for petitioner.

Frederick Havard, Washington, D. C., for respondent.

Before CUMMINGS and SPRECHER, Circuit Judges, and CAMPBELL, Senior District Judge.*

WILLIAM J. CAMPBELL, Senior District Judge.

W. W. Grainger, Inc., has petitioned to review and set aside an order[1] of the National Labor Relations Board (Board), affirming the findings of an Administrative Law Judge. The Board has cross-applied for enforcement of its order. The Board concluded that petitioner violated Section 8(a)(1) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1) by maintaining invalid no-solicitation rules. The Board further concluded that petitioner violated Section 8(a)(1) by issuing warnings to two employees, Walter Pace and Bruce Talaber, and Section 8(a)(3) by discharging Talaber. Be-

cause there is substantial evidence on the record as a whole to support the Board's conclusions, we deny the petition for review, and we enforce the Board's order.

The record demonstrates that W. W. Grainger, Inc., is engaged in the business of wholesale distribution of electrical products, and operates a distribution warehouse in Niles, Illinois, where approximately 90 people are employed. For several years prior to the events giving rise to this case, petitioner had experienced attempts at union organization of its employees. During the first week of April, 1975, two of its former employees, Boscarino and Hansen, solicited employees to sign union[2] authorization cards at the warehouse entrance. Boscarino and Hansen were brothers-in-law of Talaber, one of petitioner's employees. Their relationship to Talaber and union activity were known to Dean Null, petitioner's Warehouse Personnel Manager.

The record further shows that prior to work Talaber also gave union authorization cards to some of the employees at the warehouse, handed out some ballpoint pens imprinted with the name of the union, and, on a few occasions, discussed the union with several employees during work time. In April or May, 1975, Null indicated to Talaber that he had heard that Talaber was soliciting for the union on working time. Talaber denied the charge, and stated that he was merely telling the employees that the union was good. Null then warned Talaber that any further soliciting on working time would result in his termination. Later the same day Null confronted Pace with a similar accusation. Pace denied that he had been soliciting for the union, and stated that it was Talaber who was soliciting. Null then warned Pace that soliciting during working time could be punished by discharge. In neither interview did Null reveal to Pace or Talaber any of the details concerning the alleged solicitations, or offer

---

* Senior District Judge William J. Campbell of the Northern District of Illinois is sitting by designation.

1. 222 NLRB No. 22.

2. Local 714, International Brotherhood of Teamsters, Chauffeurs, Warehousemen, and Helpers of America.

any reasons for believing the two had been soliciting during working time.

On June 2 Richard Muller, petitioner's Warehouse Operations Manager, issued a written warning to Pace, advising him that employee Chekos had told Muller that Pace had solicited Chekos during working time. Although Pace denied the accusation, he signed the written warning. Pace then told Muller that it was Talaber who had been soliciting. Later the same day, Muller inquired of Pace whether he had solicited others. Pace stated that Talaber had solicited him during the prior week in regards to a meeting to be held in June. Pace further stated that Talaber had solicited employees Dublinski and Davis, although he gave no details about this solicitation nor was he asked to do so. A couple of days later Muller handed Pace a statement which read:

> "I was approached during working hours by Bruce Talaber. My work was interrupted by Talaber's solicitation activity. I have brought this to the attention of my supervisor."

Upon Muller's request, Pace signed the statement. Beyond the written statement of Pace, no investigation was made into the details of the solicitation. Muller showed the document to petitioner's Vice-President Lyons with a recommendation that Talaber be fired. Lyons remarked that this "written documentation" constituted evidence of "flagrant multiple violations" of the petitioner's no-solicitation rule.

On June 9, as Talaber was reporting for work, he was escorted by a foreman to Muller's office. Muller told Talaber that he was being terminated for soliciting for a union and that the company had evidence in its files that he was soliciting on company time. Talaber denied the accusation and asked to see the evidence in the files. His request having been refused, Talaber was escorted off the premises.

Initially, the Board found that at all relevant times petitioner had in effect three successive, illegal no-solicitation rules. Petitioner conceded that its published rules were facially invalid due to the breadth of language employed. In view of its ultimate decision that petitioner's disciplinary actions against Pace and Talaber and the discharge of Talaber were pretextual actions designed to punish union adherents without regard to whether they had violated the no-solicitation rules, the Board found it unnecessary to address petitioner's contention that, as communicated and applied, the no-solicitation rule was valid. Our review of the record reveals substantial evidence to support the Board's determination that petitioner's no-solicitation rules were invalid. Since we further find substantial evidence to support the Board's ultimate determination, we likewise deem it unnecessary to treat petitioner's contention here.[3]

█ In seeking to set aside the Board's order, petitioner principally contends that no substantial evidence supports the Board's determination that the discharge of Talaber amounted to a pretextual action in violation of Section 8(a)(3). As we recently stated on several occasions, the controlling principle behind the finding of a Section 8(a)(3) violation is the determination that the employer's action in discharging an employee was discriminatorily motivated. *See NLRB v. Gogin,* 575 F.2d 596, 601 (7th Cir. 1978); *Electri-Flex Co. v. NLRB,* 570 F.2d 1327, 1331 (7th Cir. 1978); *NLRB v. National Food Stores, Inc.,* 332 F.2d 249, 252 (7th Cir. 1964); *see also Labor Board v. Brown,* 380 U.S. 278, 286, 85 S.Ct. 980, 13 L.Ed.2d 839 (1965). Motivation is a factual determination which must be supported by substantial evidence, *Jays Foods, Inc. v. NLRB,* 573 F.2d 438, 443 (7th Cir. 1978), and in making such a determination the Board is free to rely on both circumstantial and direct evi-

---

**3.** On the basis of *Essex International, Inc.,* 211 NLRB 749 (1974), petitioner contended before the Board and argues here that its presumptively invalid no-solicitation rules were rendered valid because they were communicated and applied in such a way as to convey an intent clearly to permit solicitation during the employees' own time, *i. e.,* during lunch periods, break time, etc. We merely note in passing that the only no-solicitation rules ever communicated generally to the employees were the facially invalid rules.

dence. *NLRB v. Gogin, supra,* 575 F.2d at 601. Further, while there must be substantial evidence on the record as a whole to support the Board's determination, the decision is entitled to affirmance "even though the court would justifiably have made a different choice had the matter been before it *de novo.*" *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 488, 71 S.Ct. 456, 465, 95 L.Ed. 456 (1957).

■ In this case the Board concluded that petitioner's disciplinary actions were pretextual, or discriminatorily motivated, because petitioner "enforced its rules against Pace and Talaber without significant prior investigation of their alleged misconduct." 229 NLRB No. 22, at p. 5. A failure to investigate the incidents upon which the employer relies as grounds for discharge may reflect an employer's discriminatory motivation. *See NLRB v. Gogin, supra,* 575 F.2d at 602. We find sufficient evidence to support the Board's determination.

Through Talaber's open distribution of authorization cards and ballpoint pens and discussion of the union with employees, as well as the familial relationship to others doing the same, the petitioner was well aware of Talaber's union activism. Almost all of Talaber's actual soliciting occurred before and after work, or during breaks and lunch periods. The record shows that at the first meetings with Pace and Talaber, Null accused the two of soliciting during working time on the basis of what he had heard. The record contains no evidence of what acts led Null to believe that Talaber and Pace had solicited on company time. Indeed, according to Talaber, he merely had been remarking to other employees that the union was good—an act which can hardly amount to soliciting, especially since petitioner allowed virtually unrestricted discussion among employees as long as they continued to work.

With respect to the June 2 meeting between Pace and Muller, Pace told Muller that Talaber had solicited him (Pace) on company time. Muller did not inquire of Pace or anyone else as to the details concerning when, where, what was done, etc., but rather drafted a conclusory statement which Pace later signed. Further, the substance of what Pace told Muller is far from clear. According to Pace's confused testimony, the solicitation consisted of a conversation with Talaber lasting about five minutes during working time, which ended with Pace signing an authorization card and receiving a ballpoint pen. According to Muller, Pace told him that Talaber "solicited" Pace about a meeting to be held at Talaber's house. After Pace stated to Muller that Talaber had also solicited Davis and Dublinski during working time, an effort was made to confirm the solicitation of Dublinski. Other than the conclusion that Talaber had solicited Dublinski during working time, the petitioner offered no evidence that the facts underlying the conclusion were investigated. Apparently no effort was made to contact Davis.

■ The substance of petitioner's argument is that Pace and Talaber were adequately warned that soliciting for the union was punishable by dismissal, that Talaber solicited during working time, and that his discharge therefor was consistent with petitioner's right to maintain discipline as its business establishment. The rather ill-developed evidence adduced at the hearing would be susceptible of such an interpretation if the lack of evidence of investigation were ignored. Since we ascertain that substantial evidence on the record as a whole supports the Board's finding that the discipline of Pace and Talaber and the discharge of Talaber were effected without meaningful prior investigation, we will not disturb the Board's determination that petitioner's actions were discriminatorily motivated.

Accordingly, for the reasons stated herein, the petition for review is denied, and the cross-application for enforcement of the Board's order is granted.

REVIEW DENIED.

ENFORCEMENT GRANTED.