**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**GOLD STANDARD ENTERPRISES, INC., et al., Respondents.**

No. 81–1699.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 24, 1982.

Decided May 25, 1982.

Catherine Garcia, Elliott Moore, N.L.R.B., Washington, D. C., for petitioner.

David W. Adelamn, Altheimer & Gray, Chicago, Ill., for respondents.

Before SWYGERT, Senior Circuit Judge, POSNER, Circuit Judge, and BARTELS,[*] Senior District Judge.

SWYGERT, Senior Circuit Judge.

The National Labor Relations Board ("the Board") seeks enforcement of its order against Gold Standard Enterprises, Inc. ("the Company") pursuant to section 10(e) of the National Labor Relations Act, as amended, 29 U.S.C. §§ 151 *et seq.* ("the Act"), 29 U.S.C. § 160(e). This court previously denied enforcement of the Board's order in a related proceeding. *NLRB v. Gold Standard Enterprises, Inc.*, 607 F.2d 1208 (7th Cir. 1979). We noted there that the Company had complied with the Board's order, and that the real reason for bringing that enforcement action was to pressure the Company with regard to the charges now before us. We observed that the administrative law judge had decided against the Company and hoped that, if the Board should concur, the Company would voluntarily comply. Unfortunately it appears that the Board must bring this enforcement action.

The Company operates liquor stores and wine and cheese shops in the State of Illinois. In October 1976 the employees of the Company began organizational efforts for the Retail Clerks Union, ("Retail Clerks") as their collective bargaining representative. During the summer of 1978 both the Company and Local 3, Liquor & Allied Workers Union ("Local 3"), a rival union, engaged in numerous alleged violations of the Act. On May 7, 1980 the Board found that the Company: (1) violated section 8(a)(1) of the Act by coercively interrogating and threatening employees about their union activities and by creating an impression of surveillance of union activities; (2) violated sections 8(a)(1), (2), and (3) of the Act by recognizing Local 3 as the bargaining representative of its employees when it did not represent an uncoerced majority of its employees, and through soliciting employees to sign authorization and dues-checkoff cards for Local 3 and threatening and discharging employees who refused to sign, and (3) violated sections 8(a)(1) and (3) of the Act by discriminating against certain employees because of their union activities. Finally, the Board held the Company jointly and severally lia-

---

[*] The Honorable John R. Bartels, United States Senior District Judge for the Eastern District of New York, sitting by designation.

ble with Local 3 for the monetary damages it awarded the employees.[1]

Two main issues are before this court. First, are the Board's findings supported by substantial evidence on the record considered as a whole? Second, did the Board correctly hold the Company jointly and severally liable with the Union? We make one preliminary comment. The Company, in its briefs submitted to this court, offered only copies of the briefs that it submitted to the administrative law judge and the Board upon their respective consideration of these issues. We note that, unlike the Board vis-a-vis the Administrative Law Judge, our standard of review requires us to affirm the Board's findings of fact so long as they are supported by substantial evidence on the record considered as a whole. *See U.S. Soil Conditioning v. NLRB*, 606 F.2d 940, 944 (10th Cir. 1979).

### I.  Section 8(a)(1) Violations

An employer violates section 8(a)(1) of the Act if it coercively interrogates an employee about his or other employee's union sentiments or activities, *NLRB v. Gogin*, 575 F.2d 596, 600 (7th Cir. 1978), threatens employees with reprisals for engaging in protected activities, *NLRB v. Lucy Ellen Candy, Div. of F & F Lab., Inc.*, 517 F.2d 551, 553 (7th Cir. 1975), or creates the impression that it is surveilling the union activities of employees. *Electri-Flex Co. v. NLRB*, 570 F.2d 1327, 1331 (7th Cir.), *cert. denied*, 439 U.S. 911, 99 S.Ct. 280, 58 L.Ed.2d 256 (1978). An employer's statements violate section 8(a)(1) not only when they actually produce a coercive effect, but also when they have the tendency to do so. This tendency is judged from the standpoint of the economically-dependent employee. *Jay's Foods, Inc. v. NLRB*, 573 F.2d 438, 444 (7th Cir.), *cert. denied*, 439 U.S. 859, 99 S.Ct. 176, 58 L.Ed.2d 167 (1978). Moreover, an employer violates section 8(a)(1) by threatening employees with retaliation for engaging in concerted activities even if the employees have not attempted

or even contemplated exercising their section 7 rights. *NLRB v. Coca-Cola Company Foods Division*, 670 F.2d 84 (7th Cir. 1982).

First, the Company made numerous illegal inquiries into the employees' union activities during the campaign for the Retail Clerks. Sam Manpearl, the manager of the River Grove store, twice asked employee DeMaio about the union activities of herself and other employees. In late June he also asked employee Gulledge whether she knew of the previous day's union meeting and who attended. These inquiries are classic section 8(a)(1) violations. *Satra Belarus, Inc. v. NLRB*, 568 F.2d 545, 547–48 (7th Cir. 1978). The fact that both employees, who had been active in the organizational effort, refused to answer the questions concerning other employees is clear evidence of the coercive effect of the inquiries. *Jay's Foods, Inc. v. NLRB*, 573 F.2d at 444; *Self-Reliance Ukrainian American Cooperative Assoc. v. NLRB*, 461 F.2d 33, 36 (7th Cir. 1972). Similarly, in late June, Ralph Fisher, the manager of the Ridge store, asked employee Peek whether she and other employees had attended the Retail Clerk's meeting and whether she had signed a card for the Union. Specifically questioning whether an employee has signed a union card violates section 8(a)(1). *NLRB v. Gogin*, 575 F.2d 596, 600 (7th Cir. 1978).

Second, on various occasions the Company created the impression that it was surveilling union activities. Manpearl told DeMaio that the management knew "all about" the union meeting. When Manpearl asked Gulledge about her attendance at the union meeting, he told her that he was aware that two other employees had gone to the meeting. In late June, when employee Thomas told Company President Binstein about the organizational drive and his noninvolvement in it, Binstein told Thomas that he already had that information. These statements, creating the impression that the Company was monitoring union

---

1. The Board also found that Local 3 violated sections 8(b)(1)(A) and (2) of the Act. The Union did not contest the Board's findings in this proceeding. The Board's order as it relates to the Union, therefore, is enforced.

activities, tended to chill employees in the free exercise of their section 7 rights. *Red Oaks Nursing Home, Inc. v. NLRB*, 633 F.2d 503, 506–07 (7th Cir. 1980); *Walgreen Co. v. NLRB*, 509 F.2d 1014, 1016 (7th Cir. 1975).

Finally, the Company threatened employees with reprisals for continuing to support organizational efforts of the Retail Clerks. Welch, the Waukegan store assistant manager, told employee Viau that "heads would roll" if Welch lost his job because of the unfair labor practice proceeding at which Viau was to testify. Subsequently Welch warned other employees that he would make working conditions at the store "very hard" if they chose Retail Clerks as their bargaining representative. Such statements are threats of reprisals for supporting the labor organization of one's choice and violate section 8(a)(1). *NLRB v. Brown Specialty Co.*, 436 F.2d 372, 374 (7th Cir. 1971).

## II. Sections 8(a)(1), (2), and (3) Violations

Sections 7 and 9(a) of the Act guarantee employees freedom of choice and majority rule in their selection of a collective bargaining representative. Section 8(a)(2) makes it an unfair labor practice for an employer "to dominate or interfere with the formation or administration of any labor organization or contribute financial or other support to it . . . ." The purpose of this section is to free the collective bargaining process from all taint of an employer's compulsion, domination, or interference. *NLRB v. Link-Belt Co.*, 311 U.S. 584, 588, 61 S.Ct. 358, 361, 85 L.Ed. 368 (1941). An employer violates sections 8(a)(1) and (2) when it extends recognition to a union that lacks support of an uncoerced majority of its employees. *Int'l Ladies' Garment Workers' Union v. NLRB*, 366 U.S. 731, 737–38, 81 S.Ct. 1603, 1607, 6 L.Ed.2d 762 (1961).

Section 8(a)(3) of the Act makes it illegal for an employer to discriminate against an employee "in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization; . . . ." An employer violates section 8(a)(3) when it enters into a union security agreement with a union that does not represent an uncoerced majority of its employees. In addition it violates section 8(a)(3) when, in accordance with the provisions of such an agreement, it forces employees to join and contribute to that union in order to retain their jobs. *NLRB v. Hi-Temp, Inc.*, 503 F.2d 583, 586 (7th Cir. 1974). Furthermore, even if the recognized union has majority support, employees are only required to satisfy the financial obligations of union membership. An employer violates sections 8(a)(1) and (3) of the Act if it forces employees to accept full union membership as a condition of employment. *NLRB v. Hershey Foods Corp.*, 513 F.2d 1083, 1085–87 (9th Cir. 1975).

In July 1978 the Company began to tell its employees that they must sign authorization and dues-checkoff cards for Local 3 in order to keep their jobs. In addition, the Company fired employees who refused to sign the dual purpose cards. At the Ridge store, the Company fired employees Boyell, Roder, and Meany and allowed them to return to work only on the condition that they sign the dual purpose cards. At the River Grove store employees DeMaio and Gulledge signed the cards only after the company threatened to fire them. Employee Smyka would not sign the card and so the Company replaced her. At the Skokie store employee Zelkowitz was fired for refusing to sign the dual purpose card. Employee Thomas was told he had to sign the card to keep his job. At first he refused, but after worrying about losing his job he signed the card. Finally, Salzman, the Waukegan store manager, told employees that they "might have to be terminated" if they refused to sign the dual purpose cards. These actions violated sections 8(a)(1) and 8(a)(3).

In addition, the Board found that the Union did not represent a majority of the employees. A vast majority of the employees, including some who had been with the Company for more than ten years, testified that before July 1978 they had never heard of Local 3, had never signed cards authoriz-

ing it to represent them, had never paid union dues, had never been told that they were covered by a contract, and had never seen any representatives from Local 3 at any of the Company's stores.

The Company counters that it had a twenty-year collective bargaining relationship with the Union. It asserts that it was merely enforcing the Union security and dues-checkoff provisions in its most recent agreement of August 1, 1977. The Board rejected this defense. It noted that, except for the date appearing on the contract, there was no evidence as to when the contract was executed. The record shows beyond doubt that after August 1, 1977 (the date on which the contract was allegedly executed) high-ranking Company officials told the employees that there was no union representing them. In addition, when the Company told employees that they had to sign dual purpose cards in order to keep their jobs, the Company consistently refused requests to see the contract. Furthermore, contradictory statements were made to employees in July 1978: that the contract would not be ready for "two or three weeks," that the contract was being printed up, and that the Company and the Union still had to "hammer out" an agreement. In light of the foregoing, the Board concluded that the Company's claim that it was enforcing a previously executed agreement was "unconvincing." This court will not displace the Board's choice between conflicting views of the evidence simply because other inferences might reasonably be drawn. *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S.Ct. 456, 464, 95 L.Ed. 456 (1951). We fully concur with the Board's conclusion that Local 3 lacked majority support of the employees.

III.  Sections 8(a)(1) and (3) Violations

█ An employer violates sections 8(a)(1) and (3) of the Act when it discriminates against an employer in terms or conditions of employment because of his union sentiments or activities. The Board found that the Company violated sections 8(a)(1) and (3) in its treatment of employees Thomas and Mary Loftus.

Thomas was a truckdriver for the Company for ten years. In early July he was in the Skokie store when Local 3 representatives solicited employees to sign the dual purpose cards. At first Thomas refused to sign, but fearing the loss of his job, he signed the card. Later that day he was at the Highland Park store when Nick Lamb, the store's supervisor of receiving, told Thomas that the Company was taking him off the truck because it thought that he was "mixed up with the Union." The following week Thomas was transferred to the Highland Park store and was assigned a stocking position. His hours were reduced four hours weekly. After several months the Company eventually returned him to his truckdriving job.

The Board reasoned that the sudden transfer of a ten-year experienced truckdriver to a lesser-paying position immediately after he expressed reluctance to sign the dual purpose card could only reasonably be explained as discrimination against him for his union activities as well as to set an example to other employees. We will not overturn reasonable inferences that the Board draws. *W. W. Grainger, Inc. v. NLRB*, 582 F.2d 1118, 1120-21 (7th Cir. 1978). The Board's finding is upheld.

Mary Loftus was an employee at the Company's Ridge store. On July 5, 1978 the Company discharged her because she refused to sign a dual purpose card for Local 3. *See* part II, *supra*. She was reinstated only after agreeing to sign the card. After her return to work the Company issued her six disciplinary warning notices concerning lateness. The Board concluded that these notices were given to punish and harass Loftus for her prior union activities on behalf of Retail Clerks and for her refusal to sign a dual purpose card for Local 3.

Two main factors support the Board's conclusion. First, Store Manager Fisher who issued the warnings had identified Loftus as the employee who had spearheaded the Retail Clerks' campaign and who had urged the other employees not to sign the dual purpose cards for Local 3. Fisher told employee Peek that Loftus would not be

asked to return with the other employees because she was "the ringleader." Peek also testified that Assistant Store Manager Davidson prohibited her from talking to Loftus over the telephone while at the store even though before the incident he had never objected to her doing so. Second, in her previous twelve years with the Company, Loftus had never been given a written warning even though she had been late several times. Once the union campaign began, however, so did the written disciplinary notices. These facts, combined with the large number of reprimands within a short period of time following her reinstatement, amply support the Board's findings.

### IV. Joint and Several Liability

The Board held that the Company was jointly and severally liable with Local 3 to make whole the unlawfully discharged employees. The Company argues that it should not bear the responsibility for any wrongdoing because it was acting in good faith pursuant to its collective bargaining agreement with Local 3. Any violations of the Act, it says, were the Union's sole responsibility.

We reject the Company's position. Section 10(c) of the Act empowers the Board to order appropriate remedies to effectuate the policies of the Act. The standard of review of the Board's remedies is abuse of discretion. *Justak Bros. and Co., Inc. v. NLRB,* 664 F.2d 1074, 1082 (7th Cir. 1981). This court has expressly recognized that section 10(c) permits the Board to hold an employer and a union jointly and severally liable for backpay where it finds them both responsible for the loss suffered by the discharged employees. *NLRB v. Hi-Temp, Inc.,* 503 F.2d 583, 586 (7th Cir. 1974).

The Company actively participated with Local 3 in the unfair labor practices. It told employees that they must sign the dual purpose card to keep their jobs, and it terminated those who refused to sign. The Company reinstated employees only on the condition that they sign the dual purpose cards. The Company issued disciplinary warnings and changed conditions of employment because of the employees' union

activities. The Company bargained with a union that lacked majority support among the employees. The Board was quite justified in holding the Company jointly and severally liable.

The order of the Board is enforced.