The CINCINNATI BENGALS,
INC., Plaintiff,

v.

Jack THOMPSON, Defendant.

No. C–1–82–1407.

United States District Court,
S.D. Ohio, W.D.

Jan. 5, 1983.

Robert Stachler, Cincinnati, Ohio, for plaintiff.

Mark A. VanderLaan, Cincinnati, Ohio, for defendant.

## OPINION AND ORDER GRANTING MOTION TO COMPEL ARBITRATION

SPIEGEL, District Judge:

This matter came on for hearing on defendant's motion to transfer or to stay (doc. 8) and plaintiff's memorandum in opposition (doc. 14); and plaintiff's motion to compel arbitration and stay discovery pending arbitration (doc. 11), defendant's memorandum in opposition (doc. 13), and plaintiff's reply memorandum (doc. 18). At the hearing, both the motion to transfer and the motion to stay discovery were denied. The motion to compel arbitration was taken under advisement.

We hereby grant plaintiff's motion to compel arbitration. Our decision is based upon our conclusion that although not a union member, Thompson is a member of the bargaining unit represented by the National Football Association Players' Association (NFLPA). He is thus bound by the terms of the NFL Player Contract and the Collective Bargaining Agreement negotiated by the NFLPA and the National Football League Management Council (Management Council). Reading the Contract and the Agreement together, we find that there was a valid agreement to arbitrate. We also find that the subject matter of this lawsuit—whether a Club is obligated by the terms of the NFL Contract to pay compensation during a strike to a player who is not a member of the NFLPA—is covered by the agreement to arbitrate.

### I. Factual Background

Defendant Jack Thompson is employed as a professional football player by plaintiff Cincinnati Bengals (Bengals). His employment is pursuant to two NFL Player Contracts covering the 1982–83 and 1983–84 seasons (doc. 9, ex. A, B) which expressly refer to the Collective Bargaining Agreement between the Management Council and the NFLPA. The NFLPA is the recognized exclusive bargaining representative for the collective bargaining unit of which defendant Thompson is a member. The Management Council and the NFLPA executed a Collective Bargaining Agreement on March 1, 1977 for the period from February 1, 1977 through July 1, 1982 (1977 Collective Bargaining Agreement); on December 11, 1982 the same parties executed a Collective Bargaining Agreement for the period from July 16, 1982 through August 31, 1987 (1982 Collective Bargaining Agreement). The terms and conditions of defendant's employ-

ment contract with the Bengals (NFL Player Contract) are in part governed by the Collective Bargaining Agreement negotiated between the Management Council and the NFLPA.

On September 21, 1982 the NFLPA initiated a strike which lasted eight weeks. On October 27, 1982 defendant Thompson notified the Bengals by letter that he considered the Club in breach of the employment contract as it had not issued him his weekly paycheck during the strike (doc. 15, ex. E). He asserted that because he was not a member of the NFLPA and was not participating in the strike, and had so notified the Bengals, the Club was not excused from paying him in accordance with his NFL Player Contract. Defendant also stated that he considered that the breach released him from all obligations under the 1982–83 and 1983–84 player contracts.

On November 19, 1982 plaintiff Bengals brought this action in Hamilton County Common Pleas Court pursuant to Paragraph Three of the Player Contract. The Bengals sought a temporary restraining order to prevent defendant from playing football with the Michigan Panthers or any other organization. The temporary restraining order was issued that afternoon. The same day Jack Thompson brought an action against the Bengals in the United States District Court for the Western District of Washington (*Jack Thompson v. Cincinnati Bengals, Inc.,* No. C–82–1387), seeking a declaration that the Bengals had breached his NFL Player Contract (doc. 13, ex. 1).

On December 2, 1982 defendant Thompson removed the case in Hamilton County Common Pleas Court to this Court. Defendant then filed a motion to transfer this action to the Western District of Washington or, in the alternative, to stay these proceedings until the case in Washington was resolved on the grounds that the two cases involved the same factual and legal issues and that the Bengals could have brought this action in Washington rather than in Ohio (doc. 8).

On December 10, 1982 by letter to the NFLPA the Bengals filed a non-injury grievance pursuant to Article VII of the Collective Bargaining Agreement (doc. 11, ex. C). Plaintiff then filed an amended complaint in this action (doc. 9), asserting that both parties have an obligation under the NFL Player Contract to submit to arbitration all grievances concerning contract interpretation. The Bengals also filed a motion to compel arbitration and to stay all discovery pending arbitration (doc. 11).

At the hearing, the Court found with respect to the motion to transfer that the balance was not strongly in favor of the defendant as the contract was formed in Ohio, was to be governed by Ohio law, and was to be largely performed in Ohio. Accordingly, the motion to transfer was denied. *Nicol v. Koscinski,* 188 F.2d 537 (6th Cir.1951); *Priess v. Fisherfolk,* 535 F.Supp. 1271 (S.D.Ohio 1982).

With respect to plaintiff's motion to stay discovery pending arbitration, the Court found neither party would be prejudiced should discovery be permitted. This finding was based on the representations of counsel that defendant Thompson had agreed not to play football with any other organization without reasonable notice to the Bengals. Therefore, and believing that the information to be developed by discovery may be relevant to the tribunal which decides this issue, whether arbitrator or court, the Court denied the motion to stay discovery.

## II. Motion to Compel Arbitration

With respect to plaintiff's motion to compel arbitration, the Court after investigation has determined that both case law and policy considerations mandate a finding that the motion is well-taken and should be granted. In reaching this conclusion, we considered not only the memorandum supporting the motion (doc. 11), including the affidavit of Michael E. Brown and attached exhibits (doc. 15), defendant's opposing memorandum (doc. 13), and plaintiff's reply (doc. 18), but also the post-hearing documents filed by both parties. Defendant

filed a December 21, 1982 telex from the NFLPA to the Bengals stating that the NFLPA took the position that there was no grievance procedure in effect from the expiration of the 1977 Collective Bargaining Agreement until the signing of the 1982 Collective Bargaining Agreement on December 11, 1982 (doc. 19). Plaintiff filed a supplemental affidavit by Michael E. Brown (doc. 20) to which are attached a November 19, 1982 telex from the NFLPA to the Management Council presenting a non-injury grievance on behalf of players on the injured reserved list (App. A) and a December 3, 1982 letter from the NFLPA to the Management Council presenting another non-injury grievance which arose during the strike (App. B). It is apparent from these post-hearing filings that the NFLPA's position with respect to the existence of arbitration procedure during the strike is inconsistent; it is, however, the responsibility of the Court, not the NFLPA, to determine whether there was a valid arbitration agreement in effect during the strike.

■ As a preliminary matter, the Court points out that even though he is not a member of the NFLPA, defendant is nevertheless bound by the terms of the Collective Bargaining Agreement negotiated between the NFLPA and Management Council because he is a member of the bargaining unit represented by the NFLPA. *J.I. Case Co. v. NLRB,* 321 U.S. 332, 334–35, 64 S.Ct. 576, 578–79, 88 L.Ed. 762 (1944). Moreover, defendant is bound by the terms of his NFL Player Contract which incorporates the Collective Bargaining Agreement.

A. *The Agreement to Arbitrate*

■ Whether a dispute is arbitrable is a question for the Court to determine upon examination of the contract. *Siam Feather & Forest Products Co. v. Midwest Feather Co.,* 503 F.Supp. 239, 241 (S.D.Ohio 1980) and cases cited therein. But, as defendant points out, the Court must first determine that there is a valid agreement to arbitrate.

Defendant contends that there was no valid agreement to arbitrate, pointing out that paragraph twenty of the Player Con-

tract requires arbitration according to procedures established by "any collective bargaining agreement *in existence* at the time the event giving rise to such dispute occurs" (doc. 15, ex. A–1, emphasis added). The dispute arose during the strike and the resultant non-payment to Thompson. At that time the 1977 Collective Bargaining Agreement had terminated. Plaintiff responds, however, that because the 1982 Collective Bargaining Agreement is retroactive to July 16, 1982, there was an agreement "in existence." Counsel for plaintiff also noted that even though the 1977 Collective Bargaining Agreement terminated on July 1, 1982, the players continued to play football until September 21, 1982 and that grievances arising during that time would have been processed according to the 1977 Collective Bargaining Agreement. Counsel for defendant agreed that such a grievance would be covered, but argued that the injury would have occurred prior to the strike whereas defendant's non-injury grievance occurred during the strike.

■ Under all the circumstances, we conclude that there is a valid arbitration agreement. The dispute, although it arose after the 1977 Collective Bargaining Agreement had terminated, clearly arose under defendant's player contract which specifically incorporates "any collective bargaining agreement in existence during the term of this contract." Counsel for defendant conceded that there would be a valid arbitration agreement if paragraph twenty of the Player Contract provided for arbitration according to procedures established by a collective bargaining agreement "in effect" at the time the dispute arose. We find nothing in the language of the NFL Player Contract to indicate that the parties intended "in existence" to mean anything other than "in effect." Furthermore, the NFL Player Contract states that "[f]or purposes of this contract, a collective bargaining agreement will be deemed to be 'in existence' during its stated term or during any period for which the parties to that agreement agree to extend it" (paragraph Five, NFL Player Contract, doc. 15, ex. A–1). The "stated

term" of the 1982 Collective Bargaining Agreement is from July 16, 1982 through August 31, 1987 and thus the 1982 Collective Bargaining Agreement was "in existence" during the term of defendant's Player Contract.

In addition, the arbitration provisions of the 1977 and 1982 Collective Bargaining Agreements are essentially identical, permitting us to infer that the parties intended that their duties to arbitrate would not terminate automatically with the Agreement. In *Nolde Brothers, Inc. v. Bakery and Confectionary Workers Union*, 430 U.S. 243, 97 S.Ct. 1067, 51 L.Ed.2d 300 (1977), the Supreme Court held that a claim for severance pay under an expired collective bargaining agreement was arbitrable under the arbitration provisions of that agreement. The Court stated:

> While the termination of the collective-bargaining agreement works an obvious change in the relationship between employer and union, it would have little impact on many of the considerations behind their decision to resolve their contractual differences through arbitration. The contracting parties' confidence in the arbitration process and an arbitrator's presumed special competence in matters concerning bargaining agreements does not terminate with the contract. Nor would their interest in obtaining a prompt and inexpensive resolution of their disputes by an expert tribunal. Hence, there is little reason to construe this contract to mean that the parties intended their contractual duty to submit grievances and claims arising under the contract to terminate immediately on the termination of the contract; the alternative remedy of a lawsuit is the very remedy the arbitration clause was designed to avoid. *Id.* at 254, 97 S.Ct. at 1073.

The Court recognizes that what is at issue in the instant case is interpretation of the NFL Player Contract rather than of the Collective Bargaining Agreement. Nevertheless, we conclude that the rationale of *Nolde* is applicable and that the parties intended that the arbitration provisions of the Collective Bargaining Agreement re-

main in force during the negotiations which ultimately resulted in the 1982 Collective Bargaining Agreement.

As an incidental matter, we note defendant's assertion of the invalidity of the provision in paragraph twenty of the NFL Player Contract that if no collective bargaining agreement is in existence, "the dispute will be submitted ... to the League Commissioner for final and binding arbitration by him." Defendant insists that it is patently unreasonable that the parties be required to submit to arbitration by the Commissioner because he in no sense can be considered impartial. Although we recognize the difficult problems raised by this provision of paragraph twenty, our conclusion that an agreement to arbitrate was in existence during the strike makes it unnecessary for us to decide this issue.

## B. *Arbitrability of the Dispute*

Having determined that there is a valid agreement to arbitrate, we must consider whether the dispute is arbitrable. *John Wiley & Sons v. Livingston*, 376 U.S. 543, 547, 84 S.Ct. 909, 913, 11 L.Ed.2d 898 (1964). Defendant points out that plaintiff brought this action pursuant to paragraph three of the NFL Player Contract to prevent defendant from playing football for any organization other than the Bengals and that Article VII (Non-Injury Grievance) of both the 1977 and 1982 Collective Bargaining Agreements excludes disputes arising under paragraph three of the Player Contract from the duty to arbitrate. Plaintiff responds, contending that the issues raised by defendant in the action filed in Washington and in the defenses asserted in this action involve interpretation of his NFL Player Contract, in particular his right to payment during the strike. Plaintiff concludes that Article VII of the Collective Bargaining Agreement places a duty on the parties to arbitrate all questions of contract interpretation. Plaintiff also points out that the only way it could attempt to prevent defendant from playing football other than with the Bengals was to bring a lawsuit because Article VII of the Collective Bar-

gaining Agreement specifically excludes disputes arising under paragraph three of the Player Contract from arbitration.

Paragraph three of the NFL Player Contract states:

Without prior written consent of Club, Player will not play football or engage in activities related to football otherwise than for Club .... Player therefore agrees that Club will have the right, in addition to any other right which Club may possess, to enjoin Player by appropriate proceedings from playing football or engaging in football-related activities other than for Club ....

We agree with plaintiff that this provision permitted the legal action which it initiated. Article VII of both the 1977 and 1982 Collective Bargaining Agreements provides:

Any dispute ... involving the interpretation or application of, or compliance with, any provision of this agreement, ... [or] the NFL Player Contract ... will be resolved exclusively in accordance with the procedures set forth in this Article; provided that any dispute involving ... paragraph three of the NFL Player Contract will not be resolved under the procedures of this Article.

The language of Article VII clearly excludes paragraph three disputes from arbitration. We conclude that plaintiff could reasonably have determined that it had no recourse other than to initiate legal action and that the primary purpose of its action against defendant was to preserve the status quo.

 Once the temporary restraining order issued, the status quo was preserved. It continues to be preserved by virtue of defendant's agreement not to play football with another organization without reasonable notice to the Bengals. Thus paragraph three and the status quo are no longer issues in this action. Rather the issue has become one of contract interpretation involving whether plaintiff had an obligation to pay defendant during the strike, and if so, whether the failure to do so released defendant from the terms of his NFL Player Contract. Article VII of the Collective

Bargaining Agreement makes arbitration the exclusive remedy for any dispute involving interpretation of either the Collective Bargaining Agreement or the NFL Player Contract. The conclusion that the parties intended that a dispute such as this be resolved exclusively by arbitration is inescapable.

Even if the language of Article VII were less clearly indicative of the parties' intent to make arbitration the exclusive procedure for resolving disputes involving contract interpretation, we would nevertheless find that this dispute is arbitrable on the basis of the strong federal policy in favor of arbitration and the rules of contract construction enunciated by the Supreme Court in the *Steelworkers Trilogy, United Steelworkers of America v. American Manufacturing Co.,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960), *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960), *United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). The Court stated that except for matters specifically excluded, all disputes fall within the arbitration procedures. Arbitration "should not be denied unless it can be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Warrior & Gulf,* 363 U.S. at 581–83, 80 S.Ct. at 1352–53. Our own Court of Appeals has written that "[t]here is no more fundamental policy in our national labor laws than that which favors peaceful resolution of labor disputes through voluntary arbitration," pointing out that section 4 of the Norris-LaGuardia Act, 29 U.S.C. § 104, "promotes that policy by severely limiting the jurisdiction of the federal courts to intercede in labor disputes." *Aluminum Workers International v. Consolidated Aluminum Corporation,* 696 F.2d 437, 440 p. 4 slip op., No. 82–5227 (6th Cir. Dec. 22, 1982). *See also Bakery Salesman, Drivers, Warehousemen and Helpers Local Union No. 51 v. ITT Continental Baking Company, Inc.,* 692 F.2d 29 (6th Cir.1982).

## C. The Question of Waiver

Defendant insists, however, that even if this dispute is arbitrable under the terms of the Collective Bargaining Agreement, plaintiff waived its right to arbitration by filing its lawsuit as well as by delaying assertion of its claim for arbitration. Plaintiff, on the other hand, asserts that none of its actions constituted a waiver of the right to arbitration and furthermore questions of waiver must be resolved by the arbitrator and not by the Court.

There is considerable authority for the proposition that questions of waiver must go to the arbitrator. The Supreme Court has held that where the parties agree to arbitrate "any difference," a claim that a particular grievance is barred by laches is an issue for the arbitrator. *International Union of Operating Engineers, Local 150 v. Flair Builders, Inc.*, 406 U.S. 487, 491–92, 92 S.Ct. 1710, 1712–13, 32 L.Ed.2d 248 (1972). The Sixth Circuit has stated that "the Court's function is limited solely to determining if the dispute is subject to the contractual requirement of arbitration" and that whether a grievance has been timely filed is a question for the arbitrator. *Chambers v. Beaunit Corp.*, 404 F.2d 128, 131 (6th Cir.1968). Our own Court has held that issues of waiver based upon claims of delay in violation of a contractual term are questions for the arbitrator. *Siam Feather, supra*, 503 F.Supp. at 243.

We believe in general that questions of waiver are for the arbitrator to decide. Thus, having determined that the dispute in this case was one which the parties intended to be resolved by arbitration, our task is concluded. Nevertheless, we recognize that a number of courts, including our own in *Siam Feather*, have decided the question of waiver insofar as it applies to a defendant's participation in a lawsuit. For example, in *Siam Feather, supra*, at 242–43, the Court held that minimal participation in a lawsuit by a defendant does not constitute waiver of the defendant's right to arbitration. The cases relied on in *Siam Feather* also involve the question of whether a *defendant* waives his right to arbitration by participating in a lawsuit. Those cases are thus not pertinent to the situation here where the party asserting the right to arbitration is the one that initiated the lawsuit.

Nevertheless, if we were to decide the question of waiver, we would conclude that plaintiff had not waived its right to arbitration. As noted earlier, paragraph three of the NFL Player Contract specifically gives the Club the right to enjoin a player from playing football for another organization and Article VII of both the 1977 and 1982 Collective Bargaining Agreements excludes from arbitration disputes arising under paragraph three. Behavior consistent with provisions of both the contract and the agreement and intended to preserve the status quo does not, in our view, establish a waiver of the right to arbitrate.

## D. Policy Considerations

Our conclusion that under the law the motion to compel arbitration should be granted is also supported by policy considerations. We are unaware of other lawsuits arising out of the 1982 professional football strike that present similar issues. Nonetheless, we believe that such disputes were contemplated by the Management Council and the NFLPA when they negotiated the Collective Bargaining Agreement and the standard NFL Player Contract at issue here. Further we believe that the arbitration provisions of Article VII were included to provide a mechanism by which such disputes could be resolved. It is apparent to us that having the merits of this case decided by an arbitrator whose decision will be binding upon the NFL including the Management Council and the NFLPA is greatly to be preferred. The likely alternative is a hodge podge of conflicting state and federal court decisions, each of which is binding only on the parties to that suit.

## III. Conclusion

To recapitulate, the Court finds that there is a valid agreement to arbitrate and that the subject matter of this dispute is arbitrable under the terms of that agreement. Although we believe that issues of

waiver are for the arbitrator rather than the Court, we assume without deciding that plaintiff has not waived its right to arbitration by filing this lawsuit prior to seeking arbitration. Moreover, in light of the nature of the football industry, and the clarity that will result from having this issue of contract interpretation resolved by an arbitrator rather than by a variety of courts, we conclude that plaintiff's motion is well-taken.

Accordingly, the Court grants the motion to compel arbitration and Orders that this matter be submitted to arbitration in accordance with the procedures established in Article VII of the Collective Bargaining Agreement; and the trial of this action is hereby stayed until arbitration has been had in accordance with the terms of the Collective Bargaining Agreement, under the authority of 9 U.S.C. § 3.

SO ORDERED.