## TEAMSTER'S LOCAL 348 HEALTH AND WELFARE FUND, et al., Plaintiffs-Appellants,

v.

## KOHN BEVERAGE COMPANY, Defendant-Appellee.

Nos. 83–3663, 83–3672.

United States Court of Appeals, Sixth Circuit.

Argued Sept. 20, 1984.

Decided Nov. 26, 1984.

---

Alan M. Levy (argued), Chicago, Ill., Bernard S. Goldfarb, Mark V. Webber, Goldfarb & Reznick, Cleveland, Ohio, for plaintiffs-appellants in No. 83–3672.

Harry A. Tipping, Akron, Ohio, for defendant-appellee in Nos. 83–3672 and 83–3663.

William B. Gore (argued), Claybourne, Smith, Gore & Shapiro, Akron, Ohio, for plaintiffs-appellants in No. 83–3663.

Before MARTIN and CONTIE, Circuit Judges, and PECK, Senior Circuit Judge.

CONTIE, Circuit Judge.

Plaintiffs Teamster's Local 348 Health and Welfare Fund and Central States Southeast and Southwest Areas Pension Fund appeal a district court order granting judgment for defendant, Kohn Beverage Co., in this action brought pursuant to the Employee Retirement Income Security Act,

29 U.S.C. §§ 1001–1381, and 29 U.S.C. § 185(a). We reverse.

## I.

On February 20, 1981, Kohn and Teamster's Local 348 executed a collective bargaining agreement which provided that Kohn must contribute for each employee to the Teamster's Local 348 Health and Welfare Fund and Central States Southeast and Southwest Areas Pension Fund. On September 1, 1981, twenty-nine Kohn employees staged a work stoppage, and, on September 3, twenty-seven employees were terminated and subsequently replaced by non-union employees. Three discharged employees were reinstated after arbitration. When the non-union employees attempted to join the union pursuant to the union shop clause in the collective bargaining agreement, they were denied membership by Local 348 Secretary-Treasurer Dan Darrow. Darrow, who was trustee and administrator of the Health and Welfare Fund, told the employees that they would not be eligible for benefits from the Health and Welfare or Pension Funds. Kohn subsequently provided alternative health and pension benefits to the non-union employees.

On October 26, 1982, the Health and Welfare Fund filed a complaint pursuant to 29 U.S.C. §§ 185(a), 1132(a), 1145 alleging violation of the collective bargaining agreement and failure by Kohn to contribute to the employee benefit plans.[1] The plaintiffs sought to enjoin violations of the collective bargaining agreement and benefit plans and to recover unpaid contributions, interest, costs and attorney fees. After trial on March 10, 1983, the district court filed findings of fact and conclusions of law granting judgment for Kohn. The district court held that Kohn was not required to contribute to the funds for non-union employees, and that, even if Kohn were required to contribute, plaintiffs were estopped by Darrow's statements to the new employees from recovering the delinquent contributions. Additionally, the district court held that Kohn was entitled to a credit for payments made to the Health and Welfare Fund in late August 1981 for the employees terminated September 3. Plaintiffs appeal.[2]

## II.

Plaintiffs contend that the district court erred in construing the collective bargaining agreement and benefit plans to require Kohn to contribute to the plans for union members only. The construction of collective bargaining agreements and employee benefit plans is a question of law

1. Central States first learned it had been named a plaintiff in the case on January 4, 1983, and, after petitioning the court, filed an amended complaint on March 4, 1983, alleging essentially the same allegations as the original complaint.

2. The respective trust agreements define, by reference, Kohn's obligation to contribute to the trusts in terms of Kohn's obligations under the collective bargaining agreement. Therefore, the inquiry relative to both the LMRA claims and ERISA claims is identical, and jurisdiction is appropriately premised on 29 U.S.C. § 185(a). *See Laborers Health and Welfare Trust Fund v. Kaufman & Broad of Northern California,* 707 F.2d 412, 416 n. 4 (9th Cir.1983). The district court apparently made no determination as to whether plaintiffs properly brought this action "on behalf of their members," nor whether plaintiffs were "participants," "beneficiaries," or "fiduciaries" within the purview of 29 U.S.C. §§ 1002(7), (8), (21), 1132(a), (e). Whether plaintiffs properly state claims cognizable under ERISA was not raised by the parties and has no effect on our determination of issues raised in

this appeal; therefore, we express no opinion as to whether plaintiffs properly state a claim pursuant to 29 U.S.C. § 1132(a). *See Pressroom Unions-Printers League Income Security Fund v. Continental Assurance Co.,* 700 F.2d 889 (2d Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 148, 78 L.Ed.2d 138 (1983); *Local 807 Labor-Management Pension Fund v. Owens Trucking, Inc.,* 585 F.Supp. 616 (E.D.N.Y.1984); *Sixty-Five Security Plan v. Blue Cross and Blue Shield of Greater New York,* 583 F.Supp. 380, 383 (S.D.N.Y.1984); *Margaret Hall Foundation, Inc. v. Atlantic Financial Management, Inc.,* 572 F.Supp. 1475, 1485 (D.Mass.1983); *Employees Savings Plan of Mobil Oil Corporation v. Vickery,* 99 F.R.D. 138, 140–41 (S.D.N.Y.1983); *Rosenthal v. Ann Service Corp.,* 571 F.Supp. 1229, 1230 n. 1 (S.D.N.Y.1983); *Amalgamated Industrial Union Local 44–A Health and Welfare Fund v. Webb,* 562 F.Supp. 185 (N.D.Ill.1983). However, *see Fentron Industries, Inc. v. National Shopmen Pension Fund,* 674 F.2d 1300, 1305 (9th Cir.1982).

fully reviewable by this court. *Central States, Southeast and Southwest Areas Pension Fund v. Central Transport, Inc.*, 698 F.2d 802, 805 (6th Cir.1983), *cert. granted*, —— U.S. ——, 104 S.Ct. 3531, 82 L.Ed.2d 837 (1984); *Mackey v. National Football League*, 543 F.2d 606, 612 (8th Cir.1976), *cert. dismissed*, 434 U.S. 801, 98 S.Ct. 28, 54 L.Ed.2d 59 (1977).

■ The collective bargaining agreement required Kohn to contribute to the Health and Welfare Fund "for each employee covered by this Agreement," Article XIV, and to the Pension Fund "for each regular employee covered by this Agreement," Article XVII. Article II of the agreement provided that "[t]he term 'Employees', as used in this Agreement shall include Driver-Salesmen, Special Drivers, Swing Drivers, Over-the-Road Drivers, Helpers and Warehousemen, Garage Mechanics and Garage Maintenance employees." The agreement included a recognition clause and a union shop clause.[3]

Several factors guide a determination of the scope of coverage of a collective bargaining agreement. This court has construed a definition of employees by job classification to require coverage by the collective bargaining agreement of all employees within those classifications, regardless of union membership. *Central States v. Central Transport*, 698 F.2d at 804–05. The presence in the agreement of a recognition clause designating the union as the exclusive bargaining agent for all employees indicates that fringe benefit contributions are required for both union and non-union members. *Audit Services, Inc. v.*

*Rolfson*, 641 F.2d 757, 761 (9th Cir.1981); *Manning v. Wiscombe*, 498 F.2d 1311, 1313 (10th Cir.1974). The absence of language distinguishing union and non-union employees indicates that the agreement covers all employees. *Carpenters and Millwrights Health Benefit Trust Fund v. Gardineer Dry Walling Co.*, 573 F.2d 1172, 1177 (10th Cir.1978). *See Cincinnati Bengals, Inc. v. Thompson*, 553 F.Supp. 1011, 1014 (S.D. Ohio 1983).

The district court based its interpretation of the agreement on the presence of the union shop clause. However, union shop clauses have been construed to require only payment of union dues and not union membership. *NLRB v. Hershey Foods Corp.*, 513 F.2d 1083, 1085–86 (9th Cir. 1975); *Markt v. Ro-Mart, Inc.*, 471 F.Supp. 1292, 1296 (N.D.Cal.1979). *See NLRB v. Gold Standard Enterprises, Inc.*, 679 F.2d 673, 677 (7th Cir.1982). *See also Woelke & Romero Framing, Inc. v. NLRB*, 456 U.S. 645, 665, 102 S.Ct. 2071, 2082, 72 L.Ed.2d 398 (1982). Further, to construe the term "employees" to mean union members would render the language of the union shop clause surplusage. The union shop clause required "that all employees covered by this agreement ... become and remain members in good standing in the Union...." This language suggests that "employees covered by this agreement" may exist prior to and apart from union-member employees. The district court interpreted the term "employees" to mean "union-member employees." This construction effectively interprets the union shop clause to require union members to become union members, and renders the

**3.** Article I provided:

The employer recognizes the Union as the sole and exclusive bargaining agent on behalf of all employees of the Employers, as hereinafter defined in Article II, with respect to wages, hours, and all other terms or conditions of employment.

Article VI provided:

It shall be a condition of employment that all employees of the Employers covered by this Agreement, who are members of the Union in good standing on the effective date of this Agreement, shall remain members in good standing by the payment of membership dues and those who are not members on the effective date of this Agreement shall, on the thirty-first (31) day following the effective date of this Agreement, become and remain members in good standing in the Union by payment of membership dues. It shall also be a condition of employment that all employees covered by this Agreement and hired on or after its effective date shall on the thirty-first (31) day following the beginning of such employment, become and remain members in good standing in the Union by payment of membership dues.

clause meaningless. "A contract will not be construed so as to reject any words as surplusage if they reasonably can be given meaning." *Union Investment Company v. Fidelity & Deposit Company of Maryland,* 549 F.2d 1107, 1110 (6th Cir.1977).

The district court erred in interpreting the agreement as applying only to union members. The agreement recognized the union as the bargaining agent for all employees and defined the term "employees" by job classification and not union membership.[4] The agreement required contributions "for each employee covered by this agreement." The union shop clause indicates that the class of employees "covered by this agreement" is not necessarily coincident with the class of union-member employees. Further, the district court found that union and non-union members were treated identically in regard to wages, hours and conditions of employment. Accordingly, the district court erred in holding that the presence of the union shop clause alone limited Kohn's obligation to make contributions on behalf of union members.

### III.

■ The district court held, alternatively, that plaintiffs were estopped from seeking payment of the delinquent contributions by Dan Darrow's refusal to allow the newly hired Kohn employees to join the union. Whether facts proven are legally sufficient to constitute an estoppel is a question of law fully reviewable by this court. *Prize Steak Products, Inc. v. Bally's Tom Foolery, Inc.,* 717 F.2d 367, 370 (7th Cir.1983). However, because determinations concerning the specific elements of estoppel are questions of fact, *Shamrock Development Co. v. City of Concord,* 656 F.2d 1380, 1386 (9th Cir.1981), the district court's factual findings must be upheld unless clearly erroneous.

■ Without deciding that estoppel is an available defense against employee benefit funds, it is clear that Kohn did not establish the elements of estoppel.[5] Estoppel requires a representation, to a party without knowledge of the facts and without the means to ascertain them, upon which the party asserting the estoppel justifiably relies in good faith to his detriment. *See Johnson v. Williford,* 682 F.2d 868, 872 (9th Cir.1982); *Junker v. Crory,* 650 F.2d 1349, 1357 (5th Cir.1981); *NLRB v. J.D. Industrial Insulation Company, Inc.,* 615 F.2d 1289, 1294 (10th Cir.1980); *Gibson v. International Harvester Co.,* 557 F.Supp. 1000, 1003 (W.D.Tenn.1983); *Minnesota Mining and Manufacturing Company v. Blume,* 533 F.Supp. 493, 517 (S.D.Ohio 1978), *aff'd,* 684 F.2d 1166 (6th Cir.1982), *cert. denied,* 460 U.S. 1047, 103 S.Ct. 1449, 75 L.Ed.2d 803 (1983).

■ The estoppel defense fails because Kohn had knowledge about the plans and its obligations thereunder, and did not reasonably rely on Darrow's representations. The reliance of a party seeking to assert estoppel must be reasonable. *Chambless v. Masters, Mates & Pilots Pension Plan,* 571 F.Supp. 1430, 1452 (S.D.N.Y.1983). While it may be reasonable for an employee and union member to believe that a union representative has authority to act on behalf of the fund, *Scheuer v. Central States Pension Fund,* 394 F.Supp. 193, 196 (E.D.Wis.1975), *aff'd,* 570 F.2d 347 (7th Cir. 1977), reliance by an employer, with knowledge of the plan, on the statements of a union representative is unreasonable. *Audit Services, Inc. v. Rolfson,* 641 F.2d at

---

**4.** ERISA, consistent with our decision, provides that "[t]he term 'employee' means any individual employed by an employer." 29 U.S.C. § 1002(6).

**5.** In actions arising under federal statutes, federal common law, rather than state law, controls with respect to the availability of the estoppel defense. *Audit Services, Inc. v. Rolfson,* 641 F.2d at 762; *Aitken v. IP & GCU-Employer Retirement Fund,* 604 F.2d 1261, 1264 (9th Cir. 1979). We have previously declined to decide whether estoppel may be asserted against a trustee where the estoppel argument was meritless. *Van Gunten v. Central States, Southeast and Southwest Areas Pension Fund,* 672 F.2d 586, 589 (6th Cir.1982). We decline to express an opinion on an issue not necessary to disposition of the case before us.

762 (funds not estopped from seeking delinquent contributions where employer was not ignorant of his responsibilities under the collective bargaining agreement); *Martin v. Hamil*, 608 F.2d 725, 730 n. 8 (7th Cir.1979) (employer, fully aware of provisions of collective bargaining agreement, could not reasonably rely on contrary advice from union business agent); *Employer-Teamsters Joint Council No. 84, Health and Welfare Fund v. Weatherall Concrete, Inc.*, 468 F.Supp. 1167, 1170 (S.D.W. Va.1979) (employer with possession of collective bargaining agreement and constructive knowledge of its terms is precluded from asserting estoppel as a defense to an action by the trustee).

Article IV, Section 4.2 of the Amended Agreement and Declaration of Trust of Teamster's Local 348 Health and Welfare Fund provided that "[t]he trustees shall have full authority to determine the requirements with which an individual must comply in order to be eligible for benefits and to determine all of the terms and conditions of eligibility of Employees for the purpose of this Trust...." Likewise the Revised and Amended Trust Agreement for the Central States Pension Fund, Article II, Section 10 provided:

> No individual or person may act as agent for the Fund unless specifically authorized in writing by the Trustees. No Employee or Union nor any representative of any Employer or Union, in such capacity, is authorized to interpret the Plan, nor can any such person act as agent of the Trustees. Only the Board of Trustees, the Pension Payment Committee or the Pension Payment Appeals Committee are authorized to interpret the Plan within the scope of their respective authorities.

Kohn, as a party to these plans, knew or had a means of determining the truth of Darrow's statements. Further, because both plans indicate that Darrow was acting outside his authority, Kohn could not reasonably rely on Darrow's statements. *Knoll v. Phoenix Steel Corp.*, 465 F.2d 1128, 1132 (3d Cir.1972), *cert. denied*, 409 U.S. 1126, 93 S.Ct. 941, 35 L.Ed.2d 257

(1973) (employees unreasonably relied on union official's statements about pension payments where authority to determine the use of pension fund rested solely with retirement board and where pension fund agreement provided that decision of the board would be conclusive and binding); *Chambless v. Masters, Mates & Pilots Pension Plan*, 571 F.Supp. 1430 (where agreement and declaration of trust made clear that only trustees could obligate plan, reliance by worker on statement by union representative was unreasonable). *See Galvez v. Local 804 Welfare Trust Fund*, 543 F.Supp. 316, 317 (E.D.N.Y.1982) (union business agent has no authority to act for fund since ERISA mandates separation between union and pension funds); *Oates v. Teamster Affiliates Pension Plan*, 482 F.Supp. 481, 487–88 (D.D.C.1979) (estoppel applicable where reliance on representations by union president was justified by fact that plan was financed and controlled by union).

The district court erred in comparing the level of knowledge of plaintiffs with that of the Kohn employees who were refused membership in the union. Our inquiry focuses on Kohn's knowledge since Kohn claims to have relied to its detriment by establishing alternative health and pension benefits for its employees. In the absence of reasonable reliance, the district court's determination that plaintiffs are estopped from seeking the delinquent contributions is clearly erroneous.

## IV.

■ Plaintiffs also contest the district court's determination that Kohn was entitled to a credit for the contributions made to the Health and Welfare Fund in August for the employees terminated September 3. After terminating the employees, Kohn sought to apply the contributions to future obligations on behalf of its remaining union employees. The fund, through administrator Darrow, refused to provide a credit on the ground that the contributions were due since the employees remained on the Kohn payroll until September 3. The district

court found that Kohn was entitled to a credit because "[n]o where in the [collective bargaining] agreement is it found that the employer is required to make contributions on behalf of employees who fail to work any day of the month."

Paragraph (1) of 29 U.S.C. § 1103(c) provides that:

> Except as provided in paragraph (2), (3), or (4) or subsection (d) of this section, or under sections 1342 and 1344 of this title (relating to termination of insured plans), the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan.

Paragraph (2)(A)(ii) provides an exception to the general prohibition expressed in paragraph (1).

> In the case of a contribution ... made by an employer to a multiemployer plan by a mistake of fact or law (other than a mistake relating to whether the plan is described in section 401(a) of Title 26 or the trust which is part of such plan is exempt from taxation under section 501(a) of Title 26), paragraph (1) shall not prohibit the return of such contribution or payment to the employer within 6 months after the plan administrator determines that the contribution was made by such a mistake.

The statute places the determination as to whether a mistaken contribution was made in the hands of the benefit plan administrator.[6] *Peckham v. Board of Trustees of International Brotherhood of Painters and Allied Trades Union and Industry National Pension Fund,* 719 F.2d 1063, 1066, *modified,* 724 F.2d 100

(10th Cir.1983); *Hardy v. National Kinney of California, Inc.,* 571 F.Supp. 1214, 1215 (N.D.Cal.1983). "The trustees' action is conclusive unless arbitrary or capricious, not supported by substantial evidence, or erroneous on a question of law." *Peckham,* 719 F.2d at 1066. *See also Van Gunten,* 672 F.2d at 587. The district court does not appear to have followed this standard, but instead reviewed the administrator's decision *de novo.* However, under our deferential standard of review, the trustee's decision cannot be deemed arbitrary or without support.

The collective bargaining agreement provides only that contributions be made "for each employee covered by this Agreement." The Health and Welfare Fund Plan provides that "[t]he insurance of a covered person shall automatically terminate ... [a]s of the last day of the insurance month in which the covered person ceases to be engaged in full-time active employment...." The Health and Welfare Fund asserts that as long as the employees were on the payroll through September 3, they were covered by the plan, and, therefore, Kohn was obligated to contribute to the Fund for those employees. In the absence of a clear rule to the contrary, the trustee's decision that no mistaken contributions were made is not arbitrary or contrary to law. Therefore, Kohn was required to contribute for the employees terminated September 3 as well as those hired to replace them.

Finally, plaintiffs claim that the district court erred in refusing to enter judgment against Kohn for contributions owed as a result of the reinstatement in arbitration of three terminated employees. The district court declined to enter judgment until the appeals process was complete. The effect of the arbitration proceedings may be ad-

---

**6.** Employers who pay mistaken contributions have no right of action or entitlement to a refund. *Kann v. Keystone Resources, Inc.,* 575 F.Supp. 1084, 1091 (W.D.Penn.1983); *R.V. Cloud Co., Inc. v. Western Conference of Teamsters Pension Trust Fund,* 566 F.Supp. 1426, 1431 (N.D.Cal.1983); *Hardy v. National Kinney of California, Inc.,* 565 F.Supp. 1027, 1030 n. 1 (N.D.Cal.1983); *Crown Cork and Seal Company,*

*Inc. v. Teamsters Pension Fund of Philadelphia and Vicinity,* 549 F.Supp. 307, 311–12 (E.D.Penn. 1982), *aff'd,* 720 F.2d 661 (3d Cir.1983); *Martin v. Keldorn, Inc.,* 546 F.Supp. 889, 894 (N.D.Ill. 1982). *Contra Ethridge v. Masonry Contractors, Inc.,* 536 F.Supp. 365, 368 (N.D.Ga.1982); *E.M. Trucks, Inc. v. Central States,* 517 F.Supp. 1122, 1124 (D.Minn.1981).

dressed by the district court in calculation of plaintiffs' damages.

Therefore, the judgment of the district court is REVERSED and REMANDED for further proceedings consistent with this opinion.