**Ernest B. RIDENS, Plaintiff,**

v.

**VOLUNTARY SEPARATION PROGRAM, Defendant.**

Civ. No. 4–82–651.

United States District Court,
D. Minnesota,
Fourth Division.

May 30, 1985.

William D. Schutter, Babcock, Locher, Neilson & Mannella, Blaine, Minn., for plaintiff.

Scott K. Goldsmith, Rider, Bennett, Egan & Arundel, Minneapolis, Minn., for defendant.

## MEMORANDUM OPINION AND ORDER FOR JUDGMENT

DIANA E. MURPHY, District Judge.

Plaintiff, Ernest B. Ridens, brought this action against defendant, Voluntary Separation Program, to recover severance benefits allegedly owing under the Voluntary Separation Program of Texaco Inc. (Texaco), an employee benefit plan within the coverage of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, et seq. (ERISA), and for damages for loss of income. The action was filed in state court and removed to federal court by defendant. Jurisdiction is alleged under § 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B). In its answer, defendant denies that plaintiff has any rights under the Special Severance Allowance Program or any claim for loss of income. Defendant also asserts that plaintiff's claim is barred because he failed to exhaust his administrative remedies. Both parties seek attorneys' fees, costs, and disbursements. Voluntary Separation Program, an unfunded welfare/severance benefit program, No. (PN) 985, was subsequently substituted as the defendant in this action by stipulation of the parties. The action was tried to the court.

At the commencement of trial, the plaintiff agreed to voluntarily dismiss his non-ERISA claim for loss of income. Accordingly, only the ERISA claim for benefits under the Special Severance Allowance Program was tried to the court.

The court has carefully considered all testimony, depositions, and exhibits presented at trial and all arguments and memoranda of counsel. The court has also evaluated the credibility of the witnesses, and enters this Memorandum Opinion and Order for Judgment as its findings of fact and conclusions of law as required under Rule 52(a) of the Federal Rules of Civil Procedure.

### I. Facts

This dispute arises out of the decision of Ernest Ridens to leave Texaco and the determination of the defendant that Ridens was not entitled to any benefits under the Voluntary Separation Program upon leaving.

Ernest Ridens was first employed by Texaco in 1965 as a tires, batteries, and accessories clerk. By 1976 he was Division Tires, Batteries, and Accessories Sales Supervisor in Minneapolis, Minnesota. In the 1970s Texaco instituted a plan of market withdrawal from the Upper Midwest area, including the Minneapolis, Minnesota office where Ridens worked. Ridens' job duties changed to include overseeing compliance with the federal guidelines on allocation of petroleum products and termination of customers. Ridens was aware that as an ultimate result of the market withdrawal plan his position in Minneapolis would be eliminated.

In January of 1981 Ridens was informed at a meeting in Chicago, Illinois that the office in Minneapolis would be closed and was offered a new position located in Oakbrook, Illinois. Ridens at that time elected to take the transfer and verbally informed Texaco of his decision. The new position was made effective February 1, 1981 with an increase in salary from $2,675 per month to $2,808.34 per month.

Ridens was aware that acceptance of the job transfer offer meant that he would not be eligible for severance benefits under the Voluntary Separation Program established by Texaco in connection with the consolidation of its Midwest operations. The Voluntary Separation Program was implemented on December 1, 1980 as an unfunded welfare/severance pay program under ERISA and assigned the Program No. (PN) 985.

The plan provides in pertinent part:

THE PROGRAM

\* \* \* \* \* \*

UNDER AGE 55

This third category of benefits applies only to those eligible employes who are offered a job transfer to a new location requiring a change in their primary residence as covered under the Company Moving Policy as a result of this consolidation of curtailment *and* who are un-

able to accept this transfer and remain in their job assignment until released by the Company. Payments under this Program will, therefore, not be made to employes who accept a transfer to another job assignment and later resign or terminate their employment.

\* \* \* \* \* \*

TIMETABLE

\* \* \* \* \* \*

*Employees Under Age 55*
Each employe eligible to participate under the third category of benefits will have two weeks from date of notification of the transfer offer to accept or reject the transfer. Those who do not accept the transfer offer as described above will be eligible for the benefits in this category providing they remain in employment until released by the Company.[1]

The Voluntary Separation Program was administered by J.C. Grant, General Manager of the Employee Relations Department of Texaco located in White Plains, New York. The Voluntary Separation Program provides that the program administrator is to "perform all duties imposed upon him by the terms of [ERISA]. The decisions of the Program Administrator will be final and conclusive in respect to all questions relating to the Voluntary Separation Program." Ridens had received a copy of this program well in advance of the meeting in Chicago, most likely in early December of 1980. He had reviewed the program and along with other employees had informally attempted to determine the amount of benefits to which certain individuals would be entitled.

On April 17, 1981 Ridens signed a form provided by Texaco which stated:

TO: L.C. Antonsen

TEXACO INC.

This is to acknowledge that I have been offered an opportunity to transfer to Oak Brook, Ill. and have accepted such offer.

Having elected to accept this opportunity, I understand I will not be entitled to any allowance under the special Severance Allowance Program in the event I resign my employment or am terminated by the Company following the transfer.

Ridens does not dispute that accepting the transfer eliminated any claim for benefits under the Special Severance Allowance Program created by Voluntary Separation Program if nothing else occurred. He argues that subsequent actions of the parties entitle him to receive benefits under the program, however. First, Ridens changed his mind about leaving Minnesota. He sought and obtained an offer of employment that would allow him to remain in Minnesota. Ridens testified that he accepted that offer of employment on June 15, 1985.

Ridens then attempted to rescind his earlier acceptance of the transfer and to come under the Voluntary Separation Program. On June 16, 1984, Ridens signed a form that he had prepared which provides:

TO: Mr. L C Antonsen

TEXACO INC.

This is to acknowledge that I have been offered an opportunity to transfer to Oak Brook, Ill. but now decline such offer, and hereby recind my acceptance dated April 1981.

Having elected to reject this opportunity, I understand that if I (1) remain in the employment of Texaco at the location where I am now employed until Texaco decided that my services are no longer required and (2) have accumulated more than four months of service with Texaco at that time, I will be entitled to an allowance under the special Severance Allowance Program.

There is conflicting evidence on the issue of when this attempted recission was given to Lee Antonsen, Ridens' supervisor at Texaco and what exactly was discussed at their meeting or meetings. Ridens testi-

---

1. On December 1, 1980 Texaco also announced to nonunion employees, a Strategic Marketing Plan. The Strategic Marketing Plan discusses the Voluntary Separation Program and outlines its provisions.

fied that he officially notified Antonsen on June 16, 1981 that he did not want the transfer and was willing to give a week or two weeks notice before leaving Texaco. At that time he also gave Antonsen the document he had prepared and indicated that if possible he would still like to fall under the severance plan. Ridens testified that Antonsen knew that Ridens had the other job to go to and stated that he would get back to Ridens in a couple of days if the rescission could be honored. He further claims that on June 18, 1981 Antonsen assured him that the rescission had been received and honored by Texaco and that they agreed to provide severance benefits if he would stay and train a replacement. Ridens admitted that he could not remember the exact words of the conversation but stated that he was told the situation was handled and that his request was to be honored.

Lee Antonsen testified that Ridens initially disclosed only that he did not wish to transfer and that approximately one week later he requested in writing to be allowed to come within the Voluntary Separation Program. Antonsen asserted that in response he recommended to management by letter to division headquarters in Oak Brook, Illinois that Ridens be granted special severance. Antonsen stated that he never informed Ridens the request was handled or that if Ridens continued until a replacement was trained, he would be included in the program. He emphasized that he simply did not have the authority to make those decisions.

Ridens continued his employment with Texaco through the summer and had several conversations with Antonsen during this period. Ridens claims that in response to inquiries about the severance request Antonsen assured him several times that it was honored. Ridens claimed that he would have left Texaco without these assurances. Antonsen claims that no such representations were made. Ridens' replacement was hired and was receiving training from Ridens by early August. Ridens completed what he thought to be the required two weeks of training and then went on vacation. Ridens stated that he took this vacation because Antonsen was not available to give him his release from Texaco.

During this period Ridens' request for special severance benefits was being processed through Texaco's corporate channels. On June 25, 1981 B.C. Smith, Jr., the manager of employee and labor relations in Oak Brook, Illinois, wrote to R.M. Skelly in the White Plains, New York office where the program was administered concerning Ridens' request. On June 30, 1981 Ridens' form attempting to rescind his acceptance was received by Texaco in Oak Brook, Illinois. B.C. Smith noted on June 30, 1981 that the form was "drafted by employee himself to fit his situation. Not designed or approved by the Company."

An investigation into Ridens' request was conducted and a summary of background information was compiled on July 2, 1981. The Voluntary Separation Program provides that the program administrator may delegate such tasks and rely on the information provided.

On July 21, 1981 R.M. Skelly wrote to B.C. Smith advising that Ridens' request to come within the Voluntary Separation Program should be denied. Skelly stated in part:

A careful analysis was made of this entire situation. It is the opinion of this office that although thre are extenuating circumstances regarding Mr. Ridens' case, it is in the intent of the Voluntary Separation Program to offer a time frame wherein an individual must make a decision as to whether or not to accept the program or to accept a transfer to a new location.

On July 30, 1981 B.C. Smith in turn wrote to Lee Antonsen. The letter indicated that Ridens' request had been denied on the basis that the timeliness requirements of the program were not met. The letter from Smith went on to state:

You should so advise Mr. Ridens, and then proceed to separate him from service at a time appropriate to your needs.

We are seeking approval for payment of regular severance, and will advise you as soon as possible.

Antonsen stated he elected not to inform Ridens of the denial at that time because they were pursuing regular severance benefits for him.

B.C. Smith communicated the attempt to obtain regular severance pay for Ridens to J.A. Miller in Houston, Texas and indicated that his office was recommending it be approved. On August 12, 1981 Miller forwarded the request to J.C. Grant, the program administrator in White Plains, New York and indicated that his office also supported granting Ridens regular severance.

Ridens returned from his vacation on August 31, 1981. While on vacation, Ridens was told by a friend that he was not getting severance pay. On September 2, he was able to see Antonsen and he inquired whether what he had been told was true. Antonsen informed Ridens for the first time that his request for special severance pay had been denied. As a result of this meeting, Ridens submitted a letter to Antonsen dated September 4, 1981, the letter was drafted with the assistance of his attorney and stated that Ridens had accepted employment with Molo Oil Co. effective September 8, 1981. The letter also requested that Ridens receive payment under the Special Several Allowance Program and further provided that if Texaco did not believe he was entitled to such benefits it should so advise him by mail.

On September 14, 1981 the Oak Brook office provided additional information on Ridens' claim for benefits to the office in Houston, Texas. In the letter the Oak Brook office indicated that it continued to support severance for Ridens and asked for reconsideration of the original denial of Special Severance Allowance.

On October 13, 1981, J.C. Grant, the program administrator, wrote to the Houston office concerning both the Special Severance Allowance Program and regular severance for Ridens. Grant reiterated the basis for denying the request for special severance. He also denied the request for regular severance noting that Ridens did not fall within the terms of the program and that it was not appropriate to grant an exception in these circumstances.

On October 29, 1981 B.C. Smith responded to Ridens' letter of September 4, 1981. The letter provided in pertinent part:

[T]his is to confirm that your request to come with the Special Severance Allowance Program has not been allowed. Your ineligibility to participate in the Special Severance Allowance is due to the fact that you initially accepted a position to be located in Oak Brook, Illinois. You have the right to appeal this decision. Such appeal must be in writing and must be made to the Program Administrator within sixty (60) days of receiving this notification. The Program Administrator is:

Mr. J.C. Grant
General Manager
Employe Relations Dept.
Texaco Inc.
2000 Westchester Avenue
White Plains, NY 10650
914/253–4000

Ridens never filed any appeal prior to the commencement of this action on March 24, 1982.

## II. Discussion

█ Ridens has not disputed that the December 1980 Voluntary Separation Program is a welfare/severance employee benefit program subject to the provisions of ERISA. ERISA applies to any "employee benefit plan" established or maintained by an employer engaged in commerce. 29 U.S.C. § 1003. Under ERISA those welfare programs subject to its requirements and limitations are:

(1) a "plan, fund or program" (2) established or maintained (3) by an employer or by an employee organization, or by both, (4) for the purpose of providing medical, surgical, hospital care, sickness, accident, disability, death, unemployment or vacation benefits, · apprenticeship or other training programs, day care cen-

ters, scholarship funds, prepaid legal services or severance benefits (5) to participants or their beneficiaries.

*Donovan v. Dillingham,* 688 F.2d 1367, 1371 (11th Cir.1982). The provision of severance benefits by Texaco throughout the Voluntary Separation Program falls within this definition and, accordingly, the Program is subject to ERISA. *See id.; Dependahl v. Falstaff Brewing Corp.,* 491 F.Supp. 1188, 1196–97 (E.D.Mo.1980), *aff'd in relevant part, rev'd in part,* 653 F.2d 1208 (8th Cir.), *cert. denied,* 454 U.S. 968, 102 S.Ct. 512, 70 L.Ed.2d 384 (1981); *Freund v. Marshall & Ilsley Bank,* 485 F.Supp. 629, 634 (W.D.Wis.1979).

■ Ridens claims that he is entitled to benefits under the Voluntary Severance Program. At issue is the program administrator's interpretation of the language of the plan and his determination that Ridens does not fall within the coverage enumerated. A program administrator's interpretation of the language of a pension plan or a severance benefit plan is subject to review under the "arbitrary, capricious and abuse of discretion" standard. *Quinn v. Burlington Northern Inc.,* 664 F.2d 675, 678 (8th Cir.1981), *cert. denied,* 456 U.S. 928, 102 S.Ct. 1976, 72 L.Ed.2d 444 (1982); *Morgan v. Mullins,* 643 F.2d 1320 (8th Cir. 1981). Thus, the administrator's determinations regarding eligibility for benefits are to be upheld unless arbitrary and capricious. *Offutt v. Prudential Ins. Co.,* 735 F.2d 948 (5th Cir.1984); *Quinn,* 664 F.2d at 678 (quoting *Paris v. Profit Sharing Plan for Employees of Howard B. Wolff, Inc.,* 637 F.2d 357 (5th Cir.1981)). Ridens has not argued that any other standard of review is applicable and under the governing case law, the arbitrary and capricious standard is applicable.

■ A review of all the evidence provides overwhelming support that the program administrator's decision was not arbitrary and capricious. The plain meaning of the explicit language of the program provides a basis for the denial. The program provides that "[p]ayments ... will, therefore, not be made to employees who accept

a transfer to another job assignment and later resign or terminate their employment." Ridens does not dispute that he accepted the transfer immediately when offered, confirmed it in writing in April, and only in June decided to rescind his acceptance.

The office of the program administrator investigated Ridens' case prior to making a decision. The administrator was aware that extenuating circumstances were involved in Ridens case and that the regional offices had recommended extending severance benefits. It was also clear to the program administrator as well as Ridens that granting benefits would be an exception to the program requirements. With this background in mind, the program administrator denied the request. R.M. Skelly of the program administrator's office stated in his letter to the Oak Brook office that the request was denied because "it is the intent of the Voluntary Separation Program to offer a time frame wherein an individual must make a decision as to whether or not to accept the program or to accept a transfer to a new location." The decision is fully supported by the language of the program and is reasonable under any view of the evidence.

Ridens attacks the denial of benefits solely on the basis that the defendant should be precluded or estopped from denying him benefits under the plan because of the representations and actions of Lee Antonsen. Ridens asserts that he justifiably relied upon the assurances that he was included in the Voluntary Separation Program so long as he would stay until his replacement's training was completed. He also relies on the failure of Antonsen to inform him until confronted on September 2, 1981 that the request for Special Severance Allowance had been denied in July.

Defendant argues that Antonsen never made such representations and that, even if he had, Ridens had no basis to rely on them. It points out that Ridens had a copy of the Voluntary Separation Program and had reviewed the document. It argues that under the language of the program it is

clear that only the program administrator is responsible for the administration of the program and his decisions are final and conclusive in respect to all questions relating to the program.

 It is unnecessary to decide whether estoppel is an available defense against employee benefit funds, because the evidence demonstrates that Ridens has failed to establish the elements of estoppel.[2] Estoppel requires a representation, to a party without knowledge of the facts and without the means to ascertain them, upon which the party asserting the estoppel justifiably relies in good faith to his detriment. *Teamster's Local 348 Health and Welfare Fund v. Kohn Beverage Co.*, 749 F.2d 315, 319 (6th Cir.1984); *see also Johnson v. Williford*, 682 F.2d 868, 872 (9th Cir.1982); *Junker v. Crory*, 650 F.2d 1349, 1357 (5th Cir.1981); *NLRB v. J.D. Industrial Insulation Company, Inc.*, 615 F.2d 1289, 1294 (10th Cir.1980); *Minnesota Mining and Manufacturing Company v. Blume*, 533 F.Supp. 493, 517 (S.D.Ohio 1978), *aff'd*, 684 F.2d 1166 (6th Cir.1982), *cert. denied*, 460 U.S. 1047, 103 S.Ct. 1449, 75 L.Ed.2d 803 (1983).

Even if Antonsen did make the claimed representations, the estoppel defense fails. Ridens had knowledge about the plan and could not have reasonably relied upon representations by Antonsen. The reliance of a party seeking to assert estoppel must be reasonable. *Kohn Beverage Co.*, 749 F.2d at 319. The terms of the Voluntary Separation Program indicate that Antonsen would have no authority to make those statements and that only the program administrator could decide to grant an exception under the program. The Program also lists the program administrator, J.C. Grant, and gives his name and telephone number in White Plains, New York. Ridens admitted this information was available to him, that he kept a copy of the Voluntary Separation Program in his desk, and that he discussed the plan with other employees.

Ridens stated that he knew he did not qualify for benefits and that his request on June 16, 1981 was that an exception be made under the Program. Furthermore, to Ridens' knowledge Antonsen was not in the employee relations department, and Ridens made no inquiry whether Antonsen talked with or had any connection with the program administrator. Ridens was familiar with Texaco corporate procedures and knew that the normal decision making process went through the Oak Brook, Illinois office and then either the Houston, Texas office or the White Plains, New York office or both.

Under these circumstances, Ridens could not reasonably rely on the statements he claims were made by Antonsen. Antonsen had no authority to make any such statements and Ridens knew or had a means of determining both that Antonsen had no authority and that what he is claimed to have stated was untrue. Courts have consistently held that there is no estoppel when these factors are present. *E.g., Kohn Beverage Co.*, 749 F.2d at 319–20; *Martin v. Hamil*, 608 F.2d 725, 730 n. 8 (7th Cir. 1979); *Knoll v. Phoenix Steel Corp.*, 465 F.2d 1128, 1132 (3d Cir.1972), *cert. denied*, 409 U.S. 1126, 93 S.Ct. 941, 35 L.Ed.2d 257 (1973); *Employer-Teamsters Joint Council No. 84, Health and Welfare Fund v. Weatherall Concrete, Inc.*, 468 F.Supp. 1167, 1170 (S.D.W.Va.1979).

In addition, under the evidence, Ridens has failed to establish that Antonsen made the representations that serve as the basis for his claim of estoppel. Ridens himself testified that at the close of the meeting on June 16 when the request for benefits was first made, Antonsen stated he would get back to me if rescission could be honored. Furthermore, while Ridens claims that Antonsen subsequently assured him on June 18 and throughout the summer that the rescission was honored, he cannot remember the exact words used.

**2.** In actions arising under federal statutes, federal common law, rather than state law, controls with respect to the availability of the estoppel defense. *Teamster's Local 348 Health and Welfare Fund v. Kohn Beverage Co.*, 749 F.2d 315, 319 n. 5 (6th Cir.1984).

Although both Ridens and Antonsen were believable witnesses, Antonsen was a more credible witness on this issue. Antonsen stated with conviction that he had never informed Ridens that the rescission was honored or that if Ridens stayed on until his replacement was trained that he would be included in the Program. He stated that he had no authority to make such a statement, but only to recommend to the Oak Brook office that Ridens be granted the special severance allowance. Antonsen did make this recommendation because he considered Ridens to be an excellent employee.

It does appear that it was inappropriate for Antonsen not to have informed Ridens of the denial of the special severance allowance when it was denied in July of 1981. That action, in and of itself, does not give rise to a cause of action, however.[3]

■■■ In addition, Ridens' action to recover benefits under ERISA would also be barred because he failed to exhaust the available administrative procedures. It is well-settled that a claimant for benefits must exhaust the plan's internal claim procedures before seeking federal court review.[4] E.g., *Challenger v. Local Union No. 1 of the International Bridge, Structural & Ironworkers*, 619 F.2d 645 (7th Cir.1980); *Mahan v. Reynolds Metals Co.*, 569 F.Supp. 482 (E.D.Ark.1983), *aff'd*, 739 F.2d 388 (1984); *R.M. Bowler Contract Hauling Co., Inc. v. Central States, Southeast and Southwest Areas Pension Fund*, 547 F.Supp. 783, 785 (S.D.Ill.1982).

In this case it is conceded that Ridens received notice of the plan's procedure allowing him sixty days in which to make a written appeal to the program administrator, but that no appeal was filed. Ridens

has not alleged that the procedures available were inadequate nor that it would have been futile to resort to them. Furthermore, the record would not support such allegations. On the evidence presented, Ridens' claim also fails because the administrative procedures were not exhausted. *See, e.g., Amato v. Bernard*, 618 F.2d 559, 568 (9th Cir.1980).

### ORDER

Accordingly, based on the above and all the files, records, and proceedings herein,

IT IS HEREBY ORDERED that plaintiff Ernest B. Ridens is not entitled to relief under the claims alleged in his complaint, and the complaint is dismissed in its entirety with prejudice.

LET JUDGMENT BE ENTERED ACCORDINGLY.

---

**3.** The party asserting the defense of estoppel must also show that his reliance was to his detriment. The evidence establishes that at the time Ridens accepted the transfer his annual salary was increased to $33,700. Ridens' deposition testimony, which was read into evidence, was that his starting annual salary with Molo Oil was $33,800. Thus, if Ridens had left Texaco at some point in June, July, or August rather than September, his financial gain would have been miniscule.

**4.** Plaintiff concedes that the remaining cause of action is brought under ERISA although the complaint fails to specify the governing provisions or even that it is brought pursuant to ERISA. The action is one to recover benefits and would fall under sections 502(a)(1)(B) and 502(a)(3) of ERISA, 29 U.S.C. §§ 1132(a)(1)(B), (a)(3).