**CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND, Plaintiff,**

v.

**CAPITOL CITY LUMBER COMPANY, a Michigan corporation, Defendant.**

**No. G83–361CA5.**

United States District Court, W.D. Michigan, S.D.

Nov. 18, 1985.

Russell N. Luplow by Charles J. Taunt, Bloomfield Hills, Mich., for plaintiff.

Hubbard, Fox, Thomas, White & Bengtson by Thomas A. Bengtson, Lansing, Mich., for defendant.

## OPINION RE MOTION FOR SUMMARY JUDGMENT

HILLMAN, District Judge.

On April 15, 1983, plaintiff, Central States, Southeast and Southwest Areas Pension Fund ("Central States"), filed this action to recover allegedly delinquent pension fund contributions. Plaintiff brings this action under section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185(a), section 502 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132, and section 306 of the Multiemployer Pension Plan Amendments Act of 1980, 29 U.S.C. § 1145. Plaintiff alleges that defendant, Capitol City Lumber Company, is delinquent in its pension fund contributions on behalf of employees covered under a collective bargaining agreement between defendant and the

Teamsters and Chauffeurs Local Union No. 580 ("Local 580"). This matter is now before the court on cross-motions for summary judgment.

Plaintiff moves for partial summary judgment pursuant to Fed.R.Civ.P. 56(a). Plaintiff seeks summary judgment on the following issues:

"1. That the defendant had and has a continuing obligation to contribute to Central States after expiration of the collective bargaining agreement;

2. That the defendant is obligated to make contributions on behalf of all members of the collective bargaining unit, whether or not they had joined the union;

3. That the defendant is obligated to pay interest on all delinquent contributions since May 1, 1980."

Defendant moves for summary judgment pursuant to Fed.R.Civ.P. 56(b). In short, defendant asserts that its liability to plaintiff for pension fund contributions on behalf of its employees ended on April 30, 1982.

The following facts are pertinent to the resolution of the parties' motions for summary judgment. Central States is a multi-employer-employee benefit plan. Capitol City Lumber, as an employer, entered into a collective bargaining agreement with Local 580 that became effective for one year beginning May 1, 1979. The agreement contained a provision of automatic renewal each successive year, absent written notice from one of the parties to the other of an intention to cancel or terminate the agreement sixty (60) days prior to the expiration date for a particular year. Under the terms of the collective bargaining agreement, defendant agreed to make pension contributions on behalf of its employees to plaintiff. Defendant also entered into a "Participation Agreement" with plaintiff pursuant to its agreement with Local 580.

Defendant originally contended that its liability to the pension fund ended on April 30, 1981, when, according to defendant, it effectively terminated the collective bargaining agreement with Local 580. Accordingly, defendant ceased making pension fund contributions on May 1, 1981. In response, Local 580 "filed an unfair labor practice charge, claiming that [Capitol City Lumber] had violated sections 8(a)(5) and (1) of the [National Labor Relations] Act by failing to make contributions to the [pension] funds as required by the [collective bargaining] agreement." The National Labor Relations Board "found a violation and ordered [Capitol City Lumber] to remit to the [pension] funds all amounts required by Article XIX [of the collective bargaining agreement]." *Capitol City Lumber Co. v. N.L.R.B.*, 721 F.2d 546, 548 (6th Cir.1983). The Court of Appeals for the Sixth Circuit enforced the order of the NLRB directing defendant to make pension fund contributions through April 30, 1982, as required by Article XIX of the collective bargaining agreement. *Id.* Pursuant to the decision of the court of appeals, defendant paid plaintiff $5,701.71. On October 26, 1984, the Regional Director of the NLRB wrote defendant's counsel to inform him that defendant had "satisfactorily complied" with the court order. Central States was not a party to the proceedings before the NLRB or the court of appeals.

In this action, plaintiff now asserts that defendant's payment of $5,701.71 fails to include pension contributions for several employees and interest on the delinquent contributions. In addition, plaintiff claims that defendant has a continuing duty to make pension contributions on behalf of its employees beyond the expiration of its contractual duty to make such contributions. In reply, defendant argues that its payment of $5,701.71 completely satisfies its obligation to make pension contributions through April 30, 1982. Defendant contends that its obligation to make pension contributions ended with the termination of its contractual obligation to make such payments on May 1, 1982.

### Summary Judgment Motions

On a motion for summary judgment, movant bears the burden of showing conclusively that no genuine issue of material fact exists. *Smith v. Hudson*, 600 F.2d 60

(6th Cir.); *Tee-Pak, Inc. v. St. Regis Paper Co.*, 491 F.2d 1193 (6th Cir.1974); Fed.R. Civ.P. 56(a). In determining whether issues of fact exist, "the inferences to be drawn from the underlying facts contained in [the affidavits, attached exhibits and depositions] must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). A court may not resolve disputed questions of fact in a summary judgment decision, and if a disputed question of fact remains, the district court should deny the motion, and proceed to trial. *United States v. Articles of Device*, 527 F.2d 1008, 1011 (6th Cir.1976).

In this case, both parties assert that no genuine issue as to any material facts exists. Nonetheless, summary judgment may not be appropriate at this stage of the proceedings. *See, e.g., Wermager v. Cormorant Township Board*, 716 F.2d 1211, 1214 (8th Cir.1983); *Begnaud v. White*, 170 F.2d 323, 327 (6th Cir.1948). If a genuine issue of material fact exists concerning a question upon which both parties seek summary judgment, then both summary judgment motions will be denied. *See ITCO Corp. v. Michelin Tire Corp., Commercial Division*, 722 F.2d 42, 45 n. 3 (4th Cir. 1983). In ruling upon the parties' summary judgment motions, I will consider separately each issue raised by the parties.

A. *Defendant's Continuing Obligation to Pay Pension Contributions.*

The parties agree that defendant's contractual obligation to make pension contributions on behalf of its employees to plaintiff ended on April 30, 1982. Plaintiff, however, moves for "summary judgment on the issue that the defendant had and has a continuing obligation to contribute to Central States after expiration of the col-

lective bargaining agreement." Defendant moves for summary judgment on the ground that it has "no ... legal requirement to contribute to the pension fund subsequent to April 30, 1982," and that "it has tendered all required pension fund contributions ... through April 30, 1982." Both parties' summary judgment motions, therefore, involve the question whether defendant has a continuing obligation to make pension fund contributions beyond the expiration of its contractual obligation.

■ Before instituting unilateral changes in mandatory subjects of bargaining, an employer must bargain in good faith to impasse. *See, e.g., National Labor Relations Board v. Katz, et al.*, 369 U.S. 736, 82 S.Ct. 1107, 8 L.Ed.2d 230 (1962). The expiration of a collective bargaining agreement does not allow an employer to change unilaterally the terms of mandatory subjects of bargaining without first bargaining to impasse. *N.L.R.B. v. Carilli*, 648 F.2d 1206, 1214 (9th Cir.1981). "[C]ontributions to an employee pension trust fund constitute a mandatory bargaining subject." *American Distributing Co., Inc. v. N.L.R.B.*, 715 F.2d 446, 449 (9th Cir.1983). Consequently, an employer must bargain to impasse after the expiration of a collective bargaining agreement before unilaterally changing its pension fund contributions. In this case, therefore, defendant's continuing obligation to make pension contributions beyond April 30, 1982, depends upon whether Local 580 and defendant reached an impasse in their bargaining.[1]

■ The existence of an impasse depends upon the particular facts of each case. *See generally* The Developing Labor Law 634–36 (C. Morris 2d ed. 1983). In short, an impasse exists "after good faith negotiations have exhausted the prospects

1. "The fact that the court relie[s] on federal labor law principles derived from NLRB adjudications in order so to categorize the dispute and subsequently in order to rule on the substantive issues raised does not deprive the court of jurisdiction under section 301. *See Smith v. Evening News Association*, 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962). *Evening News* makes clear that courts in section 301 suits are entitled to consider facts that may also make out an unfair labor practice within the competence of the NLRB." *O'Hare v. General Marine Transport Corp.*, 740 F.2d 160, 166 (2d Cir.1984).

of concluding an agreement." *Taft Broadcasting Co.*, 163 NLRB 475, 478 (1967). An impasse, however, does not exist where a party hinges further negotiations upon the resolution of a pending unfair labor practice charge or the other party's withdrawal of an unfair labor practice charge. *See, e.g., Stark Ceramics, Inc. v. N.L.R.B.*, 375 F.2d 202, 206 (6th Cir.1967); *N.L.R.B. v. Taormina Co.*, 207 F.2d 252, 254 (5th Cir.1953).

In this case, the parties ceased bargaining from October, 1981, until June 20, 1984. The plaintiff contends that "[b]argaining was suspended because of the [defendant's] refusal to reach agreement until the NLRB action was concluded or [Local 580] withdrew its [unfair labor practice] charge." In reply, "[d]efendant maintains that the parties were unable to agree on the 'dollars and cents,' or the money package, hourly or otherwise, which would be required to achieve an agreement." Both parties use the deposition testimony of bargaining participants to support their explanation of the suspension of bargaining between defendant and Local 580.

■ In determining whether Local 580 and the defendant reached impasse in their negotiations, the intent, motive, and belief of the bargaining participants, such as James Olson, President of Capitol City Lumber, and James Cooper, business representative of Locals 580, will largely control. Where questions of intent and motivation are central, summary judgment is rarely appropriate. *See, e.g., Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962); *Croley v. Matson Navigation Co.*, 434 F.2d 73, 77 (5th Cir.1970). The motive, belief, and credibility of Mr. Olson and Mr. Cooper present factual questions that this court cannot now conclusively answer. Genuine issues as to material facts exist concerning whether Local 580 and defendant bargained to impasse and, consequently, whether defendant has a continuing obligation to make pension contributions beyond April 30, 1982.

Accordingly, defendant's motion for summary judgment is denied. In addition, plaintiff's motion for summary judgment regarding defendant's continuing obligation to make pension contributions is denied.

B. *Defendant's Obligation to Make Pension Contributions on Behalf of Union and Non-Union Employees.*

■ Plaintiff also moves for summary judgment on the scope of Capitol City Lumber Company's obligation to make pension contributions on behalf of its employees. Specifically, plaintiff moves for summary judgment "on the issue that the defendant is obligated to make contributions on behalf of all members of the collective bargaining unit, whether or not they had joined the union."

Plaintiff argues that the Participation Agreement between the parties, read in conjunction with the NLRB's order issued pursuant to the dispute between Local 580 and the defendant, requires the defendant to make pension contributions on behalf of all employees within the bargaining unit. In addition, plaintiff maintains that several recent cases support its interpretation of the parties' agreement. In response, defendant contends that the collective bargaining agreement between Local 580 and the defendant mandates a union shop. Furthermore, defendant distinguishes the cases that plaintiff presents and insists that the collective bargaining agreement only requires contributions for employees on the regular seniority list, i.e., union employees. I find plaintiff's position more persuasive.

In *Teamster's Local 348 Health and Welfare Fund, et al. v. Kohn Beverage Co.*, 749 F.2d 315 (6th Cir.1984), the Court of Appeals for the Sixth Circuit considered whether a collective bargaining agreement required the employer to contribute to the employee benefit plans for union members only. In *Kohn*, the collective bargaining agreement specified that the employer must contribute to the pension fund "for

each regular employee covered by [the collective bargaining agreement.]" The collective bargaining agreement defined "employees" by listing various job classifications. The agreement also included a union shop clause and a recognition clause. *Id.* at 318. The Court of Appeals concluded that the collective bargaining agreement required the employer to make pension fund contributions on behalf of all employees within the bargaining unit rather than only union employees. The following factors guided the court's opinion.

First, the court found that a collective bargaining agreement that defines employees by job classification requires coverage "of all employees within those classifications, regardless of union membership." *Id.* Second, the presence of a recognition clause within a collective bargaining agreement demands an employer to make fringe benefit contributions on behalf of union and non-union employees. Third, "[t]he absence of language distinguishing union and non-union employees indicates that the agreement covers all employees." *Id.* Finally, a union shop clause requires "only payment of union dues and not union membership." *Id.*

The Court of Appeals for the Third Circuit has also considered whether an employer must make pension fund contributions on behalf of all employees within a bargaining unit or only union employees within the bargaining unit. In *Byrnes v. DeBolt Transfer, Inc.*, 741 F.2d 620, 624 (3d Cir.1984), the court of appeals held that the employer was obligated to make pension contributions on behalf of all employees within the job classifications specified in the collective bargaining agreement. The court found that the definition of "employees" in the collective bargaining agreement by job classification compelled the employer to make pension contributions on behalf of those "employees." Furthermore, the court, in dictum, stated that any distinctions in pension contributions on behalf of union and non-union employees would violate the National Labor Relations Act:

"The absence of any distinction in the agreements between union and non-union members can be easily explained: the law does not permit such a distinction. Section 8(a)(3) of the National Labor Relations Act, 29 U.S.C. § 158(a)(3), provides as follows:

It shall be an unfair labor practice for an employer—by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization....

The Supreme Court made clear in *Radio Officers' Union v. NLRB*, 347 U.S. 17, 39–42, 74 S.Ct. 323, 335–337, 98 L.Ed. 244 (1954), that section 8(a)(3) meant precisely what it said: an employer may not encourage or discourage union membership by means of discrimination. The district court found that DeBolt's practice of making contributions to the Funds on behalf of union members only will encourage union membership. Not even DeBolt disputes this observation. Accordingly, section 8(a)(3) prohibits such a practice."

*Id.* at 623.

Applying the factors outlined in *Kohn*, I find that the collective bargaining agreement requires defendant to make pension contributions on behalf of all employees within the collective bargaining unit regardless of union membership. Although the collective bargaining agreement refers to "classifications of employees covered by the agreement," the agreement between defendant and Local 580 does not contain a standard employee definitional clause as in *Kohn.* Nonetheless, the NLRB has found that the collective bargaining agreement between the parties covers employees according to work classification. The Board held that the collective bargaining agreement "covers employees in the following unit:

All full-time and regular part-time truck drivers, and yard employees employed by Capitol City Lumber Company at or out of its facility located at 700 E. Kalamazoo St., Lansing, Michigan, but excluding

all sales employees, office clerical employees, and casual employees, guards, and supervisors as defined in the Act." *In re Capitol City Lumber Co. and Local 580, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America*, 263 NLRB No. 102 at 10 (August 30, 1982) [hereinafter cited as *NLRB Order*]. The Participation Agreement between the parties specifies that "[t]he [defendant] shall contribute to the ... pension fund ... for each employee covered by the collective bargaining agreement, and only such employees." Participation Agreement ¶ 5. Accordingly, Capitol City Lumber Co. should make pension contributions on behalf of all employees within the previously defined bargaining unit.[2] Furthermore, the other factors that the court of appeals outlined in *Kohn* also affirm this result.

The collective bargaining agreement contained a recognition clause that established Local 580 as the employees' exclusive representative. Collective Bargaining Agreement Art. I § 1. The collective bargaining agreement reveals no distinctions between union and non-union employees. *Cf. Brynes v. DeBolt Transfer, Inc.*, 741 F.2d 620, 623 (3d Cir.1984). Although defendant relies on the presence of a union shop clause within the agreement, the court of appeals in *Kohn* rejected the relevance of a union shop clause to the determination of the scope of an employer's duty to make pension contributions. In fact, the presence of a union shop clause indicates that "'employees covered by this agreement' may exist prior to and apart from union-member employees." *See Kohn Beverage Co.*, 749 F.2d at 318 (6th Cir.1984).

Defendant contends that the following "verbiage [in the collective bargaining agreement] appears to distinguish between union and non-union employees."

"[T]he Employer agrees to pay into the Central States Southeast and Southwest

Areas Pension Fund for each employee covered by this Agreement *who is on the regular seniority list ...*"

[emphasis added]. Collective Bargaining Agreement Art. XIX. I agree with defendant; this language is verbiage. It adds no distinctions between union and non-union employees concerning defendant's obligation to make pension contributions. Furthermore, the statement of the court of appeals in *Byrnes v. DeBolt Transfer, Inc.*, 741 F.2d at 623, raises great doubt that such a distinction among workers in the same bargaining unit could lawfully exist. Therefore, no genuine issue as to any material fact exists concerning defendant's obligation to make pension fund contributions under the collective bargaining agreement on behalf of all employees within the bargaining unit.

Accordingly, plaintiff's motion for summary judgment is granted with respect to defendant's obligation to make pension contributions on behalf of all members of the collective bargaining unit.

### C. *Defendant's Obligation to Pay Interest for Delinquent Contributions.*

Plaintiff also moves for summary judgment on the issue "that the defendant is obligated to pay interest on all delinquent contributions since May 1, 1980." Under 29 U.S.C. § 1132(g)(2), if "a judgment in favor of the plan is awarded, the court shall award the [employee pension benefit] plan ... an amount equal to the greater of (i) interest on the unpaid contributions, or (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent ... of the" unpaid contributions. The Participation Agreement between defendant and Local 580 specifies that:

"The Union and the Employer agree to be bound by, and hereby assent to, all of the terms of the Trust Agreement creat-

---

**2.** In effect, the National Labor Relations Board made the same finding when ruling upon the unfair labor practice charge against defendant. The Board ordered defendant to "[m]ake the contributions which it failed to remit to the

Michigan Conference of Teamsters Welfare Fund and the Central States Southeast and Southwest Areas Pension Fund ... for the employees in the above-described unit." *NLRB Order*, 263 NLRB No. 102 at 11.

ing [the] Central States, Southeast and Southwest Areas Pension Fund, all of the rules and regulations heretofore and hereafter adopted by the Trustees of said Trust Fund pursuant to said Trust Agreement, and all of the actions of the Trustees in administering such Trust Fund in accordance with the Trust Agreement and rules adopted."

Participation Agreement ¶ 1. Article XIV, Section 4 of the Trust Agreement provides that:

"In addition to any other remedies to which the parties may be entitled, an Employer shall be obligated to pay interest on the moneys due to the Trustees from the date when the payment was due to the date when the payment is made, ... The interest payable by an Employer, in accordance with the preceding sentence, shall be computed and charged to the Employer at the prime interest rate established by Chase Manhattan Bank (New York, New York) for the fifteenth (15th) day of the month for which the interest is charged."

In response to plaintiff's motion for summary judgment concerning defendant's obligation to pay interest for late contributions, defendant does not contest its duty to pay interest on delinquent contributions. Instead, "[d]efendant maintains that it has previously tendered, in full, any and all interest which had been due, with the specific sanction and approval of the NLRB."

Pursuant to the *NLRB Order* in the dispute between Local 580 and defendant, defendant, in August of 1984, paid plaintiff $5,701.71 for unpaid pension contributions through April 30, 1982. After defendant's payment, the Regional Director of the NLRB for Region 7 wrote to inform defendant and Local 580 that the NLRB procedings were closed. The Regional Director wrote that: "[Capitol City Lumber Co.] having satisfactorily complied with the affirmative requirements of the [*NLRB Order*], and the undersigned having deter-

mined that [Capitol City Lumber Co.] is also in compliance with the negative provision of the order, the case is hereby closed." Building upon this letter, defendant makes three specific assertions in response to plaintiff's motion for partial summary judgment concerning defendant's duty to pay interest charges on delinquent contributions.

First, defendant asserts that the prior NLRB proceedings and its compliance with the *NLRB Order* as demonstrated by the Regional Director's letter, bar this court's consideration of whether defendant owes plaintiff further interest charges. Second, defendant asserts that its payment of $5,701.71 included interest charges for delinquent contributions through April 30, 1982. Finally, defendant asserts that it has no obligation to pay interest charges on pension contributions from May 1, 1982, to the present because it does not have an obligation to make pension contributions to plaintiff beyond April 30, 1982. I will consider those assertions in reverse order.

Defendant's third assertion turns on the resolution of the issue whether defendant had and has a continuing obligation to make pension contributions beyond April 30, 1982. As previously determined in this opinion, that issue is not appropriate for summary judgment. Consequently, summary judgment on defendant's obligation to pay interest charges on pension contributions allegedly due after April 30, 1982, is not appropriate. Accordingly, plaintiff's motion for summary judgment with respect to defendant's obligation to pay interest on "delinquent" pension contributions for the period of May 1, 1982, through the present is denied.[3]

■ Defendant's second and first assertions involve the principles of res judicata and collateral estoppel. Plaintiff contends that the NLRB proceeding between defendant and Local 580 does not bar this court's consideration of whether defendant has fully paid plaintiff the interest charges on

---

**3.** If defendant has a continuing obligation to make pension contributions beyond April 30, 1982, then 29 U.S.C. § 1132(g)(2) and the Trust

Agreement would require defendant to pay interest charges on pension contributions delinquent from May 1, 1982, to the present.

delinquent pension contributions for the period from May 1, 1981, to May 1, 1982. In short, plaintiff argues that defendant's payment of $5,701.71 may be insufficient and that this court may consider its sufficiency. I agree with plaintiff's position. The letter of the Regional Director, or the completion of the NLRB proceeding between defendant and Local 580 does not preclude this court from considering whether defendant has sufficiently paid interest charges on delinquent pension contributions through April 30, 1982. Several recent cases support this conclusion.

In *O'Hare v. General Marine Transport Corp.*, 740 F.2d 160 (2d Cir.1984), the Court of Appeals for the Second Circuit considered whether its prior decision in the context of an unfair labor practice charge acted as a res judicata bar to a section 301 action by the trustees of a pension fund. The two actions involved the same core of operative facts. Additionally, "a ruling in [the union's] favor in the first action would have resulted in the trustees' recovering at least some of the damages they sought in the [second] action." *Id.* at 167. Nonetheless, the court of appeals found that res judicata did not apply to bar the trustees' section 301 action. *Id.* The court reasoned that "[t]he trustees, plaintiffs in this suit, were not a party to the earlier action, nor could they be considered privies to [the union] as a matter of law by virtue of the divergent responsibilities of pension or insurance fund trustees and union officials and lack of any showing of an agency relation. *Cf. NLRB v. Amax Coal Co.*, 453 U.S. 322, 101 S.Ct. 2789, 69 L.Ed.2d 672 (1981) (employer-selected trustees of trust fund are not 'representatives' of the employer for purposes of the National Labor Relations Act)." *Id.* In *Board of Trustees v. Universal Enterprises, Inc.*, 751 F.2d 1177 (11th Cir.1985), the Court of Appeals for the Eleventh Circuit followed the same reasoning.

In *Universal Enterprises*, as in this case, at the time that the Board of Trustees of the pension fund brought suit under ERISA to recover delinquent pension contributions from the employer, the union was bringing an unfair labor practice charge against the employer for, *inter alia*, unilaterally terminating its contributions to the pension fund. The court of appeals found that the trustees and the union had distinctive interests and, consequently, that they were not in privity for purposes of res judicata. In conclusion, the court of appeals held that the district court could consider an issue presumably determined by the unfair labor practice proceedings in the trustees' section 301 action. *Universal Enterprises*, 751 F.2d at 1183. Similarly, the unfair labor practice proceedings between Local 580 and Capitol City Lumber Co. do not in any manner bar the current action between the pension fund and Capitol City Lumber Co.

The plaintiff in this action was not a party to the unfair labor practice proceedings involving defendant and Local 580.[4] Furthermore, plaintiff and Local 580 have distinctive interests. Employer and union trustees operate the pension fund. The pension fund has an obligation under ERISA to pay benefits due to participants and their beneficiaries independent of employers' fulfillment of their contractual obligations. *See Central States, Southeast and Southwest Areas Pension Fund v. Hitchings Trucking*, 472 F.Supp. 1243 (E.D.Mi.1979). In addition, Local 580 owes no duty of fair representation to the trustees of the pension fund. *See Robbins v. Prosser's Moving & Storage Co.*, 466 U.S. 364, 104 S.Ct. 1844, 1851 n. 22, 80 L.Ed.2d 366 (1984). Plaintiff and Local 580, therefore, are not in privity for purposes of res judicata. No prior decision in the unfair labor practice charge proceedings involving Local 580 and defendant bars plaintiff's full recovery of any delinquent pension contributions and interest charges. In any event, there has been no adjudication of the

---

**4.** Plaintiff, of course, had no standing to bring the unfair labor practice charge. *Universal Enterprises*, 751 F.2d at 1183.

parties' dispute concerning the *amount* of delinquent pension contributions and interest charges that defendant allegedly owes.

 Accordingly, the NLRB proceedings between defendant and Local 580, the NLRB Regional Director's closing of the NLRB proceedings, and defendant's payment of $5,701.71 do not bar this court's consideration of the amount of pension contributions and interest charges that defendant allegedly owes plaintiff. Nonetheless, summary judgment regarding the amount of interest charges due for delinquent pension contributions through April 30, 1982, is inappropriate. A dispute of material fact exists concerning the amount of delinquent contributions that defendant owes through April 30, 1982. Consequently, a dispute of material fact exists concerning the amount of interest charges that defendant owes through April 30, 1982.

In addition, to the extent that plaintiff simply seeks summary judgment on the issue whether defendant must pay interest charges on delinquent pension contributions from May 1, 1980 to May 1, 1982, plaintiff's summary judgment motion is moot. Defendant recognizes that it owes interest charges for delinquent pension contributions through April 30, 1982. But defendant "maintains that it has previously tendered, in full, any and all interest which had been due."

## SUMMARY

Defendant's motion for summary judgment is denied. Plaintiff's motion for summary judgment regarding defendant's continuing obligation to make pension contributions beyond April 30, 1982, is denied. Plaintiff's motion for summary judgment is granted, however, with respect to defendant's obligation to make pension contributions on behalf of all employees within the collective bargaining unit. Finally, regarding plaintiff's motion on the issue that "the defendant is obligated to pay interest on all delinquent contributions since May 1, 1980," several rulings apply. First, plaintiff's motion with respect to defendant's obligation to pay interest on "delinquent"

pension contributions for the period of May 1, 1982, through the present is denied. Second, plaintiff's motion for summary judgment with respect to defendant's obligation to pay interest on delinquent pension contributions through April 30, 1982, is moot. Third, to the extent that plaintiff moves for summary judgment with respect to the amount of interest charges due for delinquent contributions through April 30, 1982, summary judgment is denied. Nonetheless, neither the prior NLRB proceedings between defendant and Local 580 nor defendant's payment of $5,701.71 to plaintiff bars this court's further consideration of the amount of pension contributions and interest charges that defendant allegedly owes plaintiff.

IT IS SO ORDERED.