**OPERATING ENGINEERS' LOCAL 324 PENSION FUND, et al., Plaintiffs,**

v.

**GRAND RAPIDS GRAVEL CO., Defendant.**

**No. 01–70410.**

United States District Court, E.D. Michigan, Southern Division.

Dec. 17, 2001.

Jeffrey M. Lesser, Livonia, MI, for Operating Engineers Local 324 Pension Fund, Trustees, Operating Engineers Local 324 Pension Fund, plaintiffs.

Timothy J. Ryan, Miller, Johnson, Kalamazoo, MI, Michael E. Stroster, Pending APP, Miller, Johnson, Grand Rapids, MI, for Grand Rapids Gravel Company, defendants.

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

EDMUNDS, District Judge.

This matter came before the Court on Plaintiffs' and Defendant's motions for summary judgment. Plaintiffs brought this action pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. § 1001 et seq., seeking to recover pension benefit contributions allegedly owed by Defendant. The parties seek summary disposition of two issues. First, whether the relevant Collective Bargaining Agreement ("CBA") between the parties requires Defendant to make pension fund contributions for employees occasionally engaged in operator engineering work, despite the fact that those employees are members of General Teamsters Union, Local No. 406 (the "Teamsters' Union" or the "Teamsters") and Defendant makes contributions on behalf of those employees to the Teamsters' pension fund. Second, whether the CBA requires Defendant to make pension fund contributions on behalf of employees engaged in operator engineering work who are employed by the Port City Redi–Mix Company, a company related to Defendant.

## I. Facts

Plaintiffs are the Operating Engineers' Local 324 Pension Fund (the "Operators' Pension Fund") and its Trustees. The Operators' Pension Fund is a jointly-administered trust fund established pursuant to Section 302 of the Labor Management Relations Act of 1947 (the "LMRA"), as amended, 29 U.S.C. § 186. See Compl. ¶ 1. It is a multi-employer employee benefit plan as defined by ERISA. See id. ¶ 2.

Defendant Grand Rapids Gravel Company ("Grand Rapids Gravel" or the "Company") is a Michigan corporation that mines sand and gravel and produces redi-mix concrete. See Cobe Aff. ¶ 4. The Company operates seven facilities under its own name and two facilities under the assumed names of Kalkman Redi–Mix ("Kalkman") and Port City Redi–Mix ("Port City"). See Rahn Dep. at 36–38. The Kalkman facility is located in Holland, Michigan and the Port City facility is located in Muskegon, Michigan, See id.

Grand Rapids Gravel was established in 1920 and currently maintains its company headquarters at 2700 28th Street, S.W. in Grand Rapids, Michigan. See Pls.' Opp. at 1–2. Port City was established in 1984, although Grand Rapids Gravel filed a Certificate of Assumed Name for Port City in 1996. See id. Ex. A and Rahn Aff. It is unclear from the parties' submissions whether Grand Rapids established Port City or purchased it from another entity.

Since 1956, Grand Rapids Gravel has entered into successive collective bargaining agreements jointly with the International Union of Operating Engineers, Local No. 324 (the "Operating Engineers' Union" or "Operator Engineers") and the Teamsters' Union.[1] *See* Pls.' Mot. at 2. The Grand Rapids Gravel and Kalkman facilities, but not the Port City facility, operate under these CBAs. *See* Cobe Aff. ¶ 7. The relevant and most recent CBA covered the period from July 16, 1998 through February 6, 2001 ("1998–2001 CBA" or the "CBA"). *See* Compl. ¶ 11. By agreement, the CBA continued beyond April 30, 2001, and was honored through June 30, 2001, because the parties failed to negotiate a new agreement. *See* Pls.' Mot. at 2–3.

Grand Rapids Gravel and Kalkman employ approximately ten members of the Operating Engineers' Union and 100 members of the Teamsters' Union. *See* Rahn Dep. at 22. The 1998–2001 CBA sets forth the job classifications within each union. *See* 1998–2001 Agreement at 9A, Art. X. For example, crane operators and front end loaders are classified as operator engineers. *See id.* Redi-mix drivers, millwrights, welders, and mechanics are Teamsters. *Id.* Historically, however, the Company has assigned Teamsters to perform operator engineering work and vice-versa from time to time.[2] *See* Cobe Dep. at 41. The CBA specifically authorizes this practice. *See* 1998–2001 CBA at 2, Art. I, § 5.[3]

Pursuant to the 1998–2001 CBA, Grand Rapids Gravel must contribute to the Operators' Pension Fund and the Teamsters' Union's Central States, Southeast and Southwest Areas Pension Fund (the "Teamsters' Pension Fund") for the employees covered by the agreement.[4] *See* 1998–2001 Agreement at 5A–8A, Art. VII of Appendix A. Article VII, Section 1(a) provides:

> Unless otherwise specified in this Agreement, the Employer agrees to pay into the Central States, Southeast and Southwest Pension Fund ("Teamsters' Pension Fund") for each employee covered by this Agreement following 30 calendar days of employment the weekly contributions shown below:
>
> $85 effective February 7, 1998
> $85 effective February 7, 1999
> $85 effective February 7, 2000

*See id.* Subsection (c) provides that Grand Rapids Gravel must make weekly contributions to the Teamsters' Pension Fund for each regular employee, regardless of the hours the employee works:

> Contributions to the Teamsters' Pension Fund must be made each week on each

---

1. The Operator Engineers and the Teamsters, jointly, are recognized as the exclusive representatives of Grand Rapids Gravel's and Kalkman's employees. *See* Rahn Aff. ¶ 7.

2. I will refer to this as "cross-jurisdictional work."

3. Article I, § 5 of the CBA provides:

   The Employer agrees to respect the jurisdictional rules of the Union and shall not direct or require their employees, or persons other than the employees in the bargaining units here involved to perform work which is recognized as the work of the employees in said units except as provided in Article XII and except where employees are requested to perform work across jurisdictional boundaries (i.e. Teamsters doing Operator Engineers work or vice-versa).

   In 2000, the Operating Engineers' Union filed a grievance challenging Grand Rapids Gravel's practice of assigning its members to do Teamsters' work, and vice-versa. *See* Def.'s Mot. Ex. A at 30–32. Arbitrator Patrick McDonald held that the CBA authorized the Company to make such cross-jurisdictional assignments. *See id.* Ex. C7. That grievance did not involve the issues in this lawsuit.

4. Article I, Section 1 of the CBA provides that "the employees covered by this agreement are those listed in Appendix A."

regular employee even though such employee may work only part time under the provisions of this Agreement, including paid vacations and weeks where work is performed for the Employer but not under the provisions of this Agreement, and although contributions may be made for those weeks into some other fund.

*See id,* at 6A, Art. VII, § 1(c) of Appendix A.

Article VII, Section 2 creates Grand Rapids Gravel's obligation to pay into the Operators' Pension Fund:

Unless otherwise specified in this Agreement, the Company agrees to pay into the State of Michigan Operating Engineers Pension Fund ("Operators' Pension Fund") for each employee covered by this Agreement the sum of:

$1.95 per hour effective February 7, 1998.

$2.10 per hour effective February 7, 1999

$2.25 per hour effective February 7, 2000.

*See id.,* Art. VII, § 2(a). According to the CBA, the Company agrees to be bound by the terms and conditions of the Operating Engineers' Pension Fund Trust Agreement (the "Trust Agreement"). *See id.*

Article VII, Section 3 addresses the issue of "duplicate payments":

It is intended that contributions for a specific period of time be made either to the Teamsters' Pension Fund or the Operators' Pension Fund; no employee shall receive pension contributions to more than one pension fund for the same period of time.

*See id.* Art. VII, § 3. The only pension funds to which the Company contributes are the Teamsters' Pension Fund, the Operators' Pension Fund, and the Company's 401(k) plan. *See* Rahn Dep. at 15.

During the negotiations of the 1998–2001 CBA, the parties discussed Grand Rapids Gravel's right to assign employees to cross-jurisdictional work. However they did not address whether such assignments would affect the Company's obligations to contribute to the Unions' separate pension funds. *See* Rahn Dep. at 31 and 33–34; Code Aff. ¶ 1. Nor did the parties address this issue prior to the execution of their 1995–1998 Collective Bargaining Agreement which contains identical provisions with respect to cross-jurisdictional work and pension benefit contributions. *See* Rahn Dep. at 33–35.

The Company pays its employees the wage rate specified in the CBA for the specific category of work they perform. *See* Rahn Dep. at 35. For example, if a Teamster employed as a redi-mix driver works four hours of his or her 40 hour shift as a front end loader (an operator engineering position), after February 7, 2000, the Company paid the employee $16.14 per hour for those four hours and $15.50 for the remaining thirty six hours. *See id;* 1998–2001 CBA at 9A–10A, Art. X of Appendix A. However, the Company only made pension contributions for that employee to the Teamsters' Pension Fund. *See* Rahn Dep. at 16–17, Def.'s Mot. Ex. D, Rahn Aff. ¶ 8.

## II. Argument

### A. Whether Grand Rapids Gravel is Required to Contribute to the Operators' Pension Fund for Teamsters Performing Operator Engineering Work

Both parties assert that the 1998–2001 CBA is not ambiguous, however they each interpret Article VII's provisions relating to payment of fringe benefit contributions differently. Plaintiffs interpret the CBA to require Defendant to contribute to its employee benefit plans based on the nature of the employee's work, not the employee's union membership. Defendant

claims that where employees perform cross-jurisdictional work it is obligated to make pension fund contributions for that employee into only one fund based on the employee's union membership. Both parties agree that there is no extrinsic evidence available to interpret these provisions.

Title VII, Section 2 of the CBA requires Defendant to contribute to the Operators' Pension Fund for "each employee covered by this Agreement." Plaintiffs argue that the CBA does not define this term and therefore the Court must look to the definition of employee provided in the Trust Agreement, to which Defendant agreed to be bound. The Trust Agreement's definition of "employee" includes, "any person who is working within the jurisdiction of the Union or on whose account an Employer is, or has been required to make contributions to the Trust Fund." *See* Pls.' Mot., Trust Agreement at 3, Art. I, § 2. Plaintiffs argue that this interpretation is consistent with prior Sixth Circuit decisions, such as *Teamster's Local 348 Health and Welfare Fund v. Kohn Beverage Co.*, 749 F.2d 315 (6th Cir.1984), finding· that the language "each employee covered by this Agreement" requires employers to determine whether to make pension fund contributions based on the type of work performed, not union membership. And Plaintiffs claim their interpretation is consistent with the NLRA which makes it illegal for an employer to discriminate against union and non-union employees in the award of fringe benefits. *See* Section 8(a)(3) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 158(a)(3).

Plaintiffs contend that their interpretation of Sections 1(a) and (2)(a) also are consistent with the language of Article VII, Section 1(c) which provides that Defendant must make weekly contributions to the Teamsters' Pension Fund even though "contributions may be made for those weeks into some other fund." Plaintiffs argue that the plain language of this provision reflects the parties' agreement that the Company may be required to pay into the Teamsters' Pension Fund, even though it paid the Operators' Pension Fund for the same employee. According to Plaintiffs, Section 3's provision for "no duplicate payments" does not lead to a different interpretation because, they submit, it reflects the parties' intent, not what is required. Even if Section 3 is mandatory, Plaintiffs argue that it is not violated if the Company is required to pay the Operators' Pension Fund at the hourly rate based on the hours the employee works as an operator engineer and to the Teamsters' Pension Fund at the weekly rate, because such payments are not made for the "same period of time."

Defendant argues that Article VII, Section 1(c) clearly requires the Company to make pension contributions to the Teamsters' Pension Fund on a weekly basis for each employee, even if the employee performs operator engineering work during that week. Defendant claims that requiring it to contribute to the Operators' Pension Fund for work performed during the same week violates the express language of Section 3 prohibiting contributions to more than one pension fund for a specific period of time. Defendant argues that interpreting the CBA this way does not violate the NLRA because its decision whether to contribute to the Operators' Pension Fund for a particular employee is based on whether it made contributions for the employee to another union's fund for the same period of time, not on whether the employee is a union member.

**B. Whether Grand Rapids Gravel Must Contribute to the Operators' Pension Fund for Port City Employees**

Defendant claims that the 1998–2001 CBA does not apply to individuals working

at the Port City Facility and therefore it is not obligated to make pension contributions for employees performing operator engineering work there. Defendant argues that even if Grand Rapids Gravel and Port City are considered a single employer, Port City constitutes a separate bargaining unit which must designate the Operators' Engineering Union as its exclusive representative in order to be covered by any agreement entered into by the union. The parties agree that a majority of employees at the Port City facility never selected the Operators' Engineering Union as their exclusive representative. Therefore, Defendant argues, it is unlawful under Section 9(a) of the NLRA for the parties to negotiate an agreement covering those employees. Defendant argues that this conclusion is consistent with the fact that since Port City was established, no party to the CBA ever claimed that its provisions applied to Port City employees.[5]

Plaintiffs contend that the CBA extends to all of Grand Rapids Gravel's facilities, and Port City is included because it is not a separate corporation. Plaintiffs further argue that even though Port City was established after Grand Rapids Gravel recognized the Operating Engineers' Union as the exclusive representative of the bargaining unit, which Plaintiffs define as all Grand Rapids Gravel employees performing operator engineering work, the facility only is an outgrowth of that bargaining unit and thus all of its employees performing such work are included in it. Plaintiffs claim that if Port City is excluded from the CBA's coverage because it was established after the bargaining unit was defined, then Kalkman also would be excluded because it too was established after Grand Rapids Gravel recognized the Union.

**5.** The significance of this fact arguably depends upon when Grand Rapids Gravel acquired Port City.

### III. Standards for Summary Judgment

Summary judgment is appropriate only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). After adequate time for discovery and upon motion, Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The movant has an initial burden of showing "the absence of a genuine issue of material fact." *Id.* at 323, 106 S.Ct. 2548. Once the movant meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *See Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). To demonstrate a genuine issue, the non-movant must present sufficient evidence upon which a jury could reasonably find for the non-movant; a "scintilla of evidence" is insufficient. *See Liberty Lobby,* 477 U.S. at 252, 106 S.Ct. 2505.

The court must believe the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *See id.* at 255, 106 S.Ct. 2505. The inquiry is whether the evidence presented is such that a jury applying the relevant evidentia-

ry standard could "reasonably find for either the plaintiff or the defendant." *See id.*

## IV. Applicable Law and Analysis

### A. Whether Grand Rapids Gravel is Required to Contribute to the Operators' Pension Fund for Teamsters Performing Operator Engineering Work

██ The Sixth Circuit provided a framework for interpreting the provisions of a CBA in *Int'l Union v. Yard–Man, Inc.*, 716 F.2d 1476 (6th Cir.1983). As the *Yard–Man* Court explained, the basic principles of contract interpretation apply:

> For example, the court should first look to the explicit language of the collective bargaining agreement for clear manifestations of intent ... The court should also interpret each provision in question as part of the integrated whole. If possible, each provision should be construed consistently with the entire document and the relative positions and purposes of the parties.

*Yard–Man*, 716 F.2d at 1479. In addition, the "terms must be construed so as to render none nugatory and avoid illusory promises." *Id.* at 1480. Finally, a court should consider extrinsic evidence only when the terms of the contract are ambiguous. *Id.*

██ Applying these rules of contract interpretation to the 1998–2001 CBA indicates that the parties intended Grand Rapids Gravel to make pension fund contributions for each employee either to the Operators' Pension Fund or the Teamsters' Fund. Sections 1(a) and 2(a), when read independently, could suggest that the Company is required to pay into both funds for each employee covered by the Agreement. However, the CBA must be read as a whole and Section 3 clearly and unambiguously states that "no employee shall receive pension contributions to more than one fund." There can be no question as to what this section prohibits, as it specifically states that contributions must be made *either* to the Teamsters' Fund *or* the Operators' Fund. Adopting Plaintiffs' interpretation of the CBA would render Section 3 meaningless.

Plaintiffs attempt to avoid this result by suggesting that payments on a weekly and hourly basis do not constitute duplicate payments "for a specific period of time." Thus, Plaintiffs claim, the Company would not violate Section 3 if it contributed to the Operators' Pension Fund at the hourly rate for the number of hours an employee works as an operator engineer and to the Teamsters' Pension Fund at the weekly rate for the remaining hours the employee works in his or her Teamsters' position. However the parties failure to include in the CBA a method for pro rating the weekly rate of the Company's contributions to the Teamsters' Pension Fund renders this interpretation implausible.

Plaintiffs' reliance on *Kohn Beverage Co.* to interpret "each employee covered by this Agreement" as requiring payments based on the type of work performed, not specific union membership, misses the fact that in that case the company interpreted the relevant CBA to require pension fund contributions on behalf of union members only. *Kohn Beverage Co.*, 749 F.2d at 317. Thus the company in *Kohn* was making pension benefit contributions on behalf of its employees based on their union membership, a practice that clearly has been held to violate federal law. *See D.E.W., Inc. v. Local 93, Laborers' Int'l Union of North America*, 957 F.2d 196, 201–02 (5th Cir.1992); *Cent. States, S.E. and S.W. Areas Pension Fund*, 627 F.Supp. 974, 979 (W.D.Mich.1985). In comparison, Grand Rapids Gravel decides whether to make pension fund contributions to a particular union's fund based not on whether the employee belongs to the union, but on

whether he or she belongs to some other union.[6] And it only makes that distinction for the purpose of determining to which fund its payments should be directed.

## B. Whether Grand Rapids Gravel Must Contribute to the Operators' Pension Fund for Port City Employees

■ Pursuant to Section 9(a) of the NLRA, a union designated by a majority of employees in a bargaining unit becomes the exclusive bargaining agent for those employees. *See* National Labor Relations Act of 1947 ("NLRA"), 29 U.S.C.A § 159(a) (West.1998). The Eleventh Circuit has provided a summary of how a union becomes the representative of employees pursuant to Section 9:

> In a typical case, the union demonstrates majority support and is recognized as the bargaining representative by petitioning the NLRB for a Board-conducted representation election. In order to demonstrate this majority support to the Board the union must make a 'showing of interest' that a majority of the employees in a designated bargaining unit want the union as their exclusive bargaining representative. To do this, the union gathers, from a majority of the employees in a bargaining unit, signed authorization cards. In other cases, bargaining status may be established through the employer's voluntary recognition of the union's majority status.

*Ona Corp. v. NLRB*, 729 F.2d 713, 719–20 (11th Cir.1984). Once a union becomes the exclusive representative of a bargaining unit, it is an unfair labor practice for the employer to refuse to bargain with the union. *See* 29 U.S.C. § 158(a)(5). Likewise, it is unlawful for an employer to recognize and bargain with a union which has not been selected by a majority of the employees in the unit. *See* 29 U.S.C. § 158(a)(2); *Peoples Gas Sys., Inc. v. NLRB*, 629 F.2d 35, 37 n. 3 (D.C.Cir.1980)(*citing NLRB v. Book*, 532 F.2d 877 (2d Cir.1976)).

■ A certified bargaining unit does not automatically encompass employees at the employer's new plants or facilities. *See Local 620, Allied Indus. Workers of America v. NLRB*, 375 F.2d 707 (6th Cir.1967)(finding that employer and union could not contractually extend boundaries of valid bargaining unit to new employees at new and distant plant). As the Sixth Circuit has explained, "[a] unit is not a flexible thing, as broad or narrow as an employer and union care to make it." *Id.* at 710. However, the boundaries of a valid, existing bargaining unit can be extended to cover employees at a new plant, even if the new employees never indicate their support of the union, if the new facility constitutes an "accretion" to the existing unit. *See id.* at 711.

■ Whether a new facility constitutes an accretion is an issue to be decided by the National Labor Relations Board (the "Board" or "NLRB"), once the scope of a bargaining unit is called into question. *See id.* The Board has wide discretionary powers in this respect. *Id.* And its determination must be based on the particular facts of each case. *Id.* (*citing Metro. Life Ins. Co. v. NLRB*, 330 F.2d 62, 65 (6th Cir.1964)). The Board's focus is on whether there is "such community of interest and functional integration" between the facilities as to require them to be viewed as a single bargaining unit. *Id.* at 709–10. The Sixth Circuit provides the following considerations to make this determination:

> prior bargaining relationship, distance of the unit from the central office, whether

---

**6.** It is not clear how the Company treats employees who are not members of any union, but that issue is not before the Court in this matter.

or not employees are interchangeable with other units, the relative autonomy, or lack thereof, of the individual unit, and the extent to which the management of the individual unit can and must deal with the day-to-day issues of the bargaining relationship.

*Meijer, Inc. v. NLRB*, 564 F.2d 737, 740 (6th Cir.1977). To address these considerations, the Board may look at whether the facility in question has a separate administrative unit, is functionally integrated with the other units, governs its workers according to different contract terms, or substantially exchanges employees with other units. *See Local 620, Allied Indus. Workers of America*, 375 F.2d at 711.

As a majority of Port City's employees never designated the Teamsters' Union or the Operating Engineers' Union as their bargaining agent, the CBA only can be extended to those employees if Port City is an accretion of Grand Rapids Gravel. That issue must be resolved by the NLRB before this Court can address Plaintiff's claim.

## V.  Conclusion

The plain language of the 1998–2001 CBA requires Grand Rapids Gravel to make pension fund contributions on behalf of the employees covered by the CBA to either the Teamsters' Pension Fund or the Operators' Pension Fund. Thus if the company contributes to the Teamsters' Pension Fund for an employee for a specific week, it need not contribute to the Operators' Pension Fund for the same employee for the hours he or she worked in an operator engineering position during that same week. Grand Rapids Gravel therefore is entitled to summary disposition of this issue.

The Court however cannot resolve the issue of whether Grand Rapids Gravel is required to make any pension fund contributions to the Operators' Pension Fund for Port City's employees pursuant to the CBA. That issue depends upon whether Port City is an accretion to the existing bargaining unit, an issue that first must be resolved by the NLRB. Accordingly, Defendant is not entitled to summary disposition of this issue. Plaintiff's claim for pension fund contributions on behalf of Port City's employees, however, is dismissed without prejudice pending the NLRB's decision.

Being fully advised in the premises, having read the pleadings, and for the reasons set forth above, the Court hereby orders as follows:

Plaintiffs' motion for summary judgment is **denied.** Defendants' motion for summary judgment is **granted in part and denied in part.** The Court summarily disposes of Plaintiffs' claim that the CBA requires Defendant to pay the Operators' Pension Fund for Teamsters performing operator engineering work. The Court dismisses without prejudice Plaintiffs' claim that the CBA requires Defendant to pay the Operators' Pension Fund for Port City's employees.